GLOVER SCHOOL AND OFFICE EQUIPMENT CO., INC., a Maryland Corporation, Defendant below, Appellant,

v.

DAVE HALL, INC., a Delaware Corporation, Plaintiff below, Appellee.

Superior Court of Delaware,
New Castle.

Argued Oct. 1, 1976.

Final Submission Jan. 24, 1977.

Decided Jan. 31, 1977.

Robert B. Walls, Jr., Walls & Daley, Wilmington, for defendant below, appellant.

Everett P. Priestley, Cooch & Taylor, Wilmington, for plaintiff below, appellee.

TAYLOR, Judge.

The plaintiff-appellee Dave Hall, Inc. [Hall], solicited and received an oral bid in March of 1974 from defendant-appellant Glover School and Office Equipment Co., Inc. [Glover] to provide and install chalkboards, tackboards and lockers at the Charles W. Bush School. Hall then submitted to the Alfred I. duPont School District a bid for certain work to be performed at the Charles W. Bush School, which incorporated the amount of Glover's oral bid. Some time later, when Hall called upon Glover to perform, Glover refused to perform for the price orally agreed upon and Hall obtained substitute performance. Hall sued Glover in the Court of Common Pleas to recover the difference between Glover's bid and the cost of the substitute performance. That Court found for Hall and gave judgment for the sum of $1,150 with interest. This is the appeal from that judgment.

I

A defense asserted to plaintiff's claim is that it is barred by the statute of frauds contained in the Sales Article of the Uniform Commercial Code. 6 *Del.C.* § 2–201. In order to reach the question of whether the statute of frauds has been satisfied, it is first necessary to consider whether the transaction is covered by the Sales Article.

§ 2–201 applies to "a contract for the sale of goods." The following definitions are helpful in understanding this phrase: § 2–106(1) defines "contract" as being "limited to the present or future sale of goods." "Contract for sale" is defined in that section as including "both a present sale of goods and a contract to sell goods at a future time." A "sale" consists in the pass-

ing of title from the seller to the buyer for a price. § 2–106(1). "Goods" are defined in § 2–105 to mean "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale . . .". "Future goods" are "[g]oods which are not both existing and identified." 6 Del.C. § 2–105(2). The contract was not a sale of goods, in contradistinction to a contract for sale of future goods. *Melms v. Mitchell*, 266 Or. 208, 512 P.2d 1336 (1973). To be a sale of future goods it must qualify as such under the considerations discussed below.

This contract included installation of those items into the school and the price did not separate the supplying and the installation. Therefore, it is necessary to determine whether the contract was in essence for the goods or whether it was in essence a contract for services.

When a contract is solely for the sale of goods or for services alone, the applicability or inapplicability of the U.C.C. is clear. However, a problem arises in the instance of a mixed contract for both goods and services.

 In the instant case, the agreement was to provide and install school lockers, chalkboards and tackboards. All of the items to be supplied by Glover are standard and not specially manufactured for this job. It is clear that some work at the job site is involved. Whether this is a major or minor part of the contract is not shown. Where the mixed nature of the contract exists, the applicability of the U.C.C. may depend upon the significance of each to the total contract. Here, the proportion of total price attributable to the cost of the units and that attributable to the cost of assembly and installation does not appear in the record; nor is any other factual basis given to permit this determination to be made. The statute does not address itself to the problem of a contract which covers materials and services. It is said that where materials are furnished or consumed in connection with the rendering of services, the contract will ordinarily be considered to be outside the coverage of the U.C.C. 1 *Anderson, Uniform Commercial Code* 209, § 2–2102:5; 229, § 2–105:10. Clearly, not every mixed contract is outside the statute. Where a mixed contract is involved, it is necessary that the Court review the factual circumstances surrounding the negotiation, formation and contemplated performance of the contract to determine whether the contract is predominantly or primarily a contract for sale of goods or for services.[1] If the cause of action centers exclusively on the materials portion or the services portion of the contract, the determination may rest upon that fact. 3 *Bender's Uniform Commercial Code Service* 1–26, § 1.03[4]; *Busch v. United Aluminum Metal Products Corp.*, see Footnote 1; *Newmark v. Gimbel's, Inc.*, 54 N.J. 585, 258 A.2d 697 (1969); *Worrell v. Barnes*, see Footnote 1.

In approaching the defense of statute of frauds, the beginning premise is that an oral contract is valid and enforceable unless prohibited or restricted by some statutory provision. 2 *Corbin on Contracts* pp. 2–3, § 275. Where a party asserts the statute of frauds defense to a claim, the applicability of the statute of frauds to the transaction must clearly appear from the claim or else that party must carry the burden of establishing that the transaction is controlled by the statute of frauds. 73 *Am.Jur.2d* Statute of Frauds § 605, p. 245. If it is established that the statute of frauds applies to the transaction, plaintiff must then show compliance. Ibid.

 It is clear that this contract involved both units and their installation. After a review of the evidence, I conclude that defendant has not sustained its burden of proving that the primary purpose of this contract was for the sale and delivery of

---

1. In *Busch v. United Aluminum Metal Products Corp.*, N.Y.Supr., 8 U.C.C.Rptg.Serv. 335 (1970), a contract for remodeling of a kitchen, was held not to be for the sale of goods. On the other hand, a contract for the sale and installation of a gas fired hot water heater was held in *Worrell v. Barnes*, 87 Nev. 204, 484 P.2d 573 (1971), to be for the sale of goods and covered by the U.C.C.

goods and that the service aspect of the contract was merely incidental to the sale of goods. The trial Court held that this is a contract for services and not for sale of goods. While I do not find sufficient evidence in the record to support the finding that the contract was primarily a service contract, it does not support a contrary finding. The reference to a notation on the papers of the subcontractor who did this work after Glover refused to perform, even if accepted as valid evidence, is insufficient to prove the nature of the contract between Glover and Hall. Hence, under the proof here, 6 Del.C. § 2–201, which imposes statute of frauds requirements upon contracts covered by the U.C.C., is not applicable to the contract upon which plaintiff seeks to recover.

## II

■ Turning to the merits of plaintiff's claim, the trial Court found that a contract was entered into between Hall and Glover. This finding is supported by the record. Certain matters in the dealing between the parties bear comment. When Hall wrote to Glover accepting Glover's oral bid, Glover made no protest that a contractual obligation would not exist unless a written contract was signed. Glover has presented testimony that shortly after Hall's letter accepting Glover's oral bid, the Glover representative informed Hall that the prices on the items were about to be increased, and informed Hall that the colors must be specified and the order placed with the manufacturer within a very short time. Three months later Hall specified the colors to Glover. Glover made no disavowal of the contract at that time. It was not until several months thereafter that Glover finally took the position that it had no contract. All of these facts support plaintiff's direct testimony and the Common Pleas Court finding that a contract existed between Hall and Glover.

It is undisputed that Glover did not perform and that Hall secured substitute performance for which Hall paid $3,500. Hall is entitled to recover the difference between the Glover contract price of $2,350 and $3,500, or $1,150.

The judgment of the Court of Common Pleas in favor of plaintiff in the amount of $1,150 with interest and costs is affirmed for the reasons stated herein.

IT IS SO ORDERED.