CONTECH ARCHITECTS AND ENGI-
NEERS, INC., and MEP Corporation,
Appellants (Defendants-Intervenors Be-
low),

v.

Jack R. COURSHON, as Nominee of the
Trustees of First Mortgage Investors, a
Massachusetts Business Trust, First
Mortgage Investors, a Massachusetts
Business Trust, the Fourteen and Twen-
ty Four Corporation, an Indiana Corpo-
ration, Robert L. Yost, Betty A. Yost,
Environmental Contractors, Inc., Chica-
go Title Insurance Company, and Wayne
Asphalt and Construction Company,
Inc., Appellees (Plaintiff, Defendants-
Intervenors Below).

No. 2–777 A 276.

Court of Appeals of Indiana,
Second District.

March 29, 1979.

Thomas S. Locke, James A. Federoff, Fort Wayne, for appellants.

Stephen E. Lewis, George E. Fruechtenicht and Martin T. Fletcher, John R. Clifton, Jr., Lindy G. Moss, Stephen H. Trexler, Fort Wayne, for appellees.

YOUNG, Judge.

First Mortgage Investors (FMI) sued to foreclose its mortgage. The defendants were the Fourteen & Twenty-Four Corp. (the mortgagor) and Robert and Betty Yost, guarantors of the underlying promissory note. The trial court ordered foreclosure. That portion of the judgment is not challenged on this appeal. The issues before us spring from certain proceedings which were tried simultaneously with the foreclosure action. These proceedings included actions to foreclose mechanic's liens on the mortgaged property and actions to recover personal judgments for work performed on the property. We agree with the trial court's resolution of these issues and affirm.

The real estate secured by the mortgage was used for the development of the Park West Shopping Center in Fort Wayne, Indiana. To carry out the necessary construction, the Fourteen & Twenty-Four Corp. entered into various agreements with subcontractors. Appellant Contech Architects & Engineers, Inc. (Contech) signed a contract with the corporation to render certain architectural and engineering services. After the suit to foreclose had been filed, Contech allegedly performed additional work on the shopping center and then filed a lien against the property. Contech intervened in the foreclosure proceeding in order to enforce its lien. The trial court determined that the lien was not valid. Contech challenges this decision and also raises some additional questions addressed in the course of this opinion.

A second subcontractor was the co-appellant MEP Corporation (MEP). MEP entered into a verbal agreement with the general contractor, the Yost Cos., to perform plumbing, heating and air conditioning work. After the suit to foreclose had been filed, MEP allegedly performed additional work on the shopping center. MEP then filed two liens against the property and intervened in this action to enforce them. The trial court denied enforcement. In this appeal MEP attacks this determination and raises other questions addressed below.

Environmental Contractors, Inc. (Environmental), a co-appellee, subcontracted with MEP. The trial court rendered judgment in favor of Environmental and against MEP for work performed by Environmental. This branch of the judgment gives rise to the remaining issues to be considered on this appeal.

Contech and MEP have each filed a brief with this court. They have also filed a joint reply brief. The Fourteen & Twenty-Four Corp., which is now in receivership, has not filed any brief. The appeal as it relates to Environmental and MEP has been separately briefed. Finally, co-appellee Chicago Title Ins. Co. (Chicago Title), the title insurer for FMI, has briefed this appeal insofar as the issues relate to FMI. With the parties thus aligned, we turn to the issues before us.

### A.

Contech challenges the trial court's decision that Contech's lien was not valid. The court found that Contech's lien was filed on May 28, 1976. However, the court denied enforcement of the lien because it was not filed within the sixty-day period required by IC 1971, 32–8–3–3 (Burns Code Ed.).

The burden was on Contech to prove that it complied with the statute. *Stanray Corp. v. Horizon Const. Co.*, (1976) Ind.App., 342 N.E.2d 645, 652; *Van Wells v. Stanray Corp.*, (1976) Ind.App., 341 N.E.2d 198, 200. In the case at hand, Contech failed to carry the burden and suffered a negative judgment. Consequently, the decision of the trial court cannot be reversed unless it is contrary to law. The decision is contrary to law only if the evidence was without conflict and pointed to one conclusion, but the trial court reached the opposite conclusion. *Stanray Corp. v. Horizon Const. Co., supra.* In making this assessment we neither weigh the evidence nor evaluate the credibility of witnesses. *Umbreit v. Chester B. Stem, Inc.*, (1978) Ind.App., 373 N.E.2d 1116, 1117. We consider only the evidence which is favorable to the judgment. *Blankenship v. Huesman*, (1977) Ind.App., 362 N.E.2d 850, 852. For the most part, Contech ignores this standard of review and merely invites us to reweigh certain items of evidence sifted from the record.

Turning to the evidence, the record discloses that the lien was filed May 28, 1976. Contech directs our attention to certain time cards (introduced into evidence by Chicago Title) which Contech argues demonstrate that work was performed by it in April, 1976, and within sixty days prior to May 28, 1976. Contech couples to this the testimony of Mr. Kriesel, its president, that entries on the cards indicate that work was performed in April, 1976. In further support of its position, Contech introduced an invoice dated May 6, 1976, addressed to the Fourteen & Twenty-Four Corp. and in the amount of $123.25.

However, the trial court could reasonably conclude that the weight of these items of evidence was minimal. Mr. Kriesel, on cross-exam, was not able to articulate the precise work performed in April, 1976, or to produce any work product to substantiate the work allegedly performed by Contech. Furthermore, the trial court's attention was directed to the fact that Contech's time card for April, 1976, did not pinpoint the exact week in which the alleged work was performed. In contrast, the other cards maintained by Contech contained weekly tabulations. These circumstances cast suspicion on Kriesel's testimony and on Contech's claim that it performed work in April, 1976. Furthermore in oral argument on this appeal, Contech expressly acknowledged that the work which allegedly served as the basis for Contech's lien may have been performed outside the sixty-day limit.

Viewing the evidence in the light most favorable to the judgment, and in light of Contech's concession, we cannot believe that a reasonable person would be forced to conclude that Contech complied with IC 32–8–3–3. Moreover, and only with respect to our resolution of this issue, the trial court alternatively was justified in concluding that any work allegedly performed by Contech within the sixty days preceding May 28, 1976, was "incidental" and therefore insufficient to tack the lien to work completed outside the sixty-day limit. "It is a general, recognized rule of law that where the time has elapsed for the filing of a mechanic's lien for labor and material furnished by such claimant, that the claimant cannot revive the limitation period by the doing of some act incidental thereto." *Ellis v. Auch*, (1954) 124 Ind.App. 454, 118 N.E.2d 809, 813; *see Gooch v. Hiatt*, (1975) Ind. App., 337 N.E.2d 585, 588.

Accordingly, we find no error in the trial court's decision that Contech's lien was invalid.

### B.

Contech argues that its lien has priority over FMI's mortgage. Contech also argues that it is entitled to attorneys' fees. Both these arguments are predicated upon the validity of the lien. We have heretofore

determined that the trial court could justifiably conclude the lien was invalid. Thus, the issues of priority and of attorneys' fees must be resolved against Contech. They need not be further considered by us.

## C.

The trial court rendered a money judgment in favor of Contech and against the Fourteen & Twenty-Four Corp. Contech argues that the damages are inadequate and that the award should be increased by the sums of $460.25 and $21,000.

The $460.25 allegedly owed to Contech was for work which Contech claims to have performed in the spring of 1976. This includes some of the same work which was crucial to a determination of the validity of Contech's lien.

■ With respect to this item of damages, Contech is again appealing from a negative judgment. Consequently, we may reverse only if a reasonable person would be forced to conclude that Contech is entitled to recover the disputed amount. We have examined the pages of the testimony which Contech cites to support its position. Our examination discloses nothing more than weak and equivocal testimony by Mr. Kriesel. The trial court's decision to discredit this evidence was certainly within the bounds of reason. Accordingly, the trial court did not err by failing to award Contech the additional amount of $460.25.

■ We turn now to consider Contech's argument with respect to the sum of $21,000. This sum represents the amount of rent which the trial court determined to be owed by Contech to the Fourteen & Twenty-Four Corp. The trial court, therefore, deducted this sum from the amount of damages which Contech recovered from the Fourteen & Twenty-Four Corp.

Contech argues in its motion to correct errors that the deduction was improper for the sole reason that "said money judgment erroneously included a set-off of Twenty One Thousand Dollars ($21,000.00) for back rent due, even though a claim for same was never asserted in any pleading filed with

this Court . . . ." No other reason is included either in the motion or the accompanying memorandum.

Contech's argument is without merit. The issue raised by Contech could easily have been mooted at trial by amending the pleadings. This being so, we are barred from reversing on this issue. "No judgment shall be stayed or reversed, in whole or in part, by the court on appeal for any defect in . . . pleadings . . . which by law might be amended in the court below, but such defects shall be deemed to be amended in the court on appeal . . . ." Ind. Rules of Procedure, Appellate Rule 15(E); *see also, Foltz v. City of Indianapolis,* (1955) 234 Ind. 656, 130 N.E.2d 650, 665 ("It is elemental that upon appeal the pleadings will be deemed amended to conform to the evidence, findings and judgment, if the allegations of the pleadings do not entirely cover the scope of the issues presented by the evidence."); *Mann v. Schnarr,* (1950) 228 Ind. 654, 95 N.E.2d 138, 141; *Boston v. Chesapeake & O. Ry.,* (1945) 223 Ind. 425, 61 N.E.2d 326, 328.

■ On appeal Contech also suggests a new and different reason for attacking the trial court's judgment. For the first time Contech now argues that the decision of the trial court with respect to the $21,000 was unwarranted by the evidence. This argument has been waived. In neither the motion to correct errors nor the accompanying memorandum did Contech contend that the $21,000 reduction was unwarranted by the evidence. Contech's sole argument, as explained *supra,* was that the trial court erred because the issue had not been couched in the pleadings. Consequently, the law does not permit Contech now to wring this entirely new argument from its motion to correct errors. Ind. Rules of Procedure, Trial Rule 59(G); *Guardiola v. State,* (1978) Ind., 375 N.E.2d 1105, *citing Finch v. State,* (1975) 264 Ind. 48, 338 N.E.2d 629, 630 (overruled on other grounds, 364 N.E.2d 750, 754) ("An alleged error should be first specifically presented to the trial court for an opportunity for correction and should not be hidden in a generality to be later

specifically raised on appeal."); *Finley v. Chain,* (1978) Ind.App., 374 N.E.2d 67, 73; *cf. Lugar v. State ex rel. Lee,* (1978) Ind., 383 N.E.2d 287.

Accordingly, we find no error with respect to the damages awarded by the trial court.

### D.

■ Contech contends on appeal that it is entitled, pursuant to its contract, to interest additional to that which was otherwise awarded by the trial court. Contech states that this additional interest should be calculated at 8% per annum and should commence to accrue sixty days after its invoices were submitted to the Fourteen & Twenty-Four Corp. for payment. Contech has waived this issue because it is fatally different from the issue it raised in its motion to correct errors.

In the motion and the accompanying memorandum, Contech stated that its right to interest arose "under IC 24–4.6–1–103." Second, Contech claimed that the interest began to accrue on the date its invoices were submitted for payment. The trial court rejected these two contentions and refused to modify its judgment.

Having lost with these two contentions, Contech has switched to some new ones. On appeal, Contech asserts the right to interest is bestowed by its contract. Furthermore, we are met with Contech's argument that, pursuant to the contract, the interest allegedly begins to accrue sixty days after the invoices were submitted for payment.

The arguments which Contech advance on appeal are too far contrary to those presented to the trial court. Both the source of the right to interest and the date it begins to accrue are different. Having told the trial judge that the right to interest is under the statute, Contech cannot now properly claim that the right is bestowed by contract. To accept Contech's change of position would be to circumvent the purpose of the motion to correct errors. This purpose is to permit the trial judge the first opportunity to correct alleged error.

*P–M Gas & Wash Co. v. Smith,* (1978) Ind., 375 N.E.2d 592, 594. To carry out this purpose, the motion should "put the trial court on notice of the particular error alleged." *Finch v. State,* (1975) 264 Ind. 48, 338 N.E.2d 629, 630, *supra.* Under no circumstance can it be said that Contech has put the trial court on notice of the particular error which Contech now asserts on appeal. The error is waived. *Guardiola v. State.*

■ In addition Contech's motion to correct errors contravened T.R. 59(B) because it contained no facts or grounds upon which the alleged error was based. This last defect probably goes far to explain why Contech's appellate argument contradicts the alleged error it presented to the trial court in the motion to correct errors.

For these reasons we conclude that the trial court did not err by failing to award interest in the manner now sought by Contech.

### E.

■ Contech argues that the amount of interest which the trial court did award to Contech should be construed as a lien on the real estate. This issue was not raised in the motion to correct errors. It is waived. T.R. 59(G).

### F.

■ We now address the issues raised by MEP. MEP filed liens on April 14, 1976, and May 26, 1976. The court held that both were invalid for failure to satisfy the sixty-day time limit of IC 32–8–3–3.

Our standard of review has already been discussed. MEP is appealing from a negative decision. The decision will be reversed only if a reasonable person would be forced to reach a conclusion opposite that reached by the trial court. In making this assessment we neither weigh the evidence nor judge the credibility of witnesses. We view the evidence in the light most favorable to the judgment.

With respect to the lien of April 14, 1976, MEP points to certain work allegedly performed on the heating and air conditioning system; work allegedly performed by Mr. Trier, MEP's president, in March, 1976; and labor performed by various other individuals, including one C. Miller. At trial, MEP introduced an exhibit consisting of an invoice dated March 14, 1976, in the amount of $3,500. It is alleged that the work billed in this invoice underlies the lien of April 14, 1976. In further support of this lien, Mr. Trier testified that he and others had performed work on the property in March, 1976.

The trial court, however, chose to discredit this evidence. For the reasons given below, the court's decision was not contrary to law. For instance, Chicago Title introduced into evidence the job cost ledger of MEP. According to this document, which was confirmed by Mr. Trier, the only work performed by MEP in 1976 and prior to the invoice date of March 14, 1976, was the work performed by C. Miller. However, Mr. Trier had to concede that the ledger does not indicate the crucial date when the alleged work was performed. At the oral argument of this appeal, counsel for MEP acknowledged that it was not clear when the work by C. Miller was done. Consequently, the trial court would properly possess serious doubt whether any work was done by C. Miller within the sixty-day limit. Mr. Trier's credibility also sagged when it was brought out that MEP's invoice of March 14, 1976, was dated on a Sunday, a day when MEP bookkeepers customarily do not prepare invoices.

In summary, we are left only with the bare assertion by Mr. Trier that work had been performed in February or early March. Given this state of the evidence, we cannot conclude that the trial court's decision was contrary to law with respect to the lien of April 14, 1976.

We reach the same conclusion with respect to the lien dated May 26, 1976. MEP sought to establish the validity of the lien by relying on certain invoices and job cost ledger book entries. The ledger book ex-tract was introduced into evidence by Chicago Title. MEP asserts that the entries show that work was performed within sixty days of May 26, 1976. However, MEP directs us to no testimony which attaches this significance to the entries. Consequently, the trial judge's decision to disbelieve or discredit the entries cannot be held to have been contrary to law.

This same conclusion applies to the invoices. The invoices themselves show only that the Fourteen & Twenty-Four Corp. was billed for certain alleged work. They do not in the least force the conclusion that the alleged work was performed within sixty days of May 26, 1976. Once again, we are left with only the bare assertion that work was performed within the crucial time period. The trial judge elected to disbelieve or discredit MEP's evidence. We cannot conclude that a reasonable person would be forced to reach a contrary result.

We, therefore, affirm the trial court's negative judgment with respect to the validity of MEP's two liens. We also conclude, alternatively, and only with respect to our resolution of this issue, that the trial judge was justified in deciding that any alleged work performed by MEP was merely "incidental" within the meaning of *Gooch v. Hiatt*, (1975) Ind.App., 337 N.E.2d 585, *supra*, and *Ellis v. Auch*, (1954) 124 Ind.App. 454, 118 N.E.2d 809, *supra*.

### G.

MEP argues that its liens have priority over FMI's mortgage. MEP also argues that it is entitled to attorneys' fees pursuant to IC 32–8–3–14. Because we have affirmed the trial court's decision denying the validity of the liens, the issues of priority and of attorneys' fees are moot.

### H.

MEP next claims that the money judgment awarded to MEP and against Fourteen & Twenty-Four Corp. was inadequate. The judgment was in the amount claimed under MEP's lien of April 14, 1976. MEP now complains that the judgment

should also include the sum of $1,404.85. This latter sum allegedly underlaid the second lien of May 26, 1976.

MEP has not favored us with any discussion of the legal theory upon which its claim was based. After reviewing the evidence in this case and after examining MEP's attempted manner of proof, we perceive that MEP was seeking recovery on an open account with respect to the sum of $1,404.85. The trial court awarded to MEP a negative decision. Consequently, we can reverse only if a reasonable person would be forced to reach a different conclusion. *Umbreit v. Chester B. Stem, Inc.*, (1978) Ind.App., 373 N.E.2d 1116, 1117, *supra.*

In an action on an open account, proof of the sending of invoices by the plaintiff to the defendant may arguably give rise to a prima facie case. *Building Systems, Inc. v. Rochester Metal Products, Inc.*, (1976) Ind. App., 340 N.E.2d 791. Moreover, proof of the total sum represented by the invoices may be sufficient to sustain a judgment in favor of the plaintiff, if (1) there is no objection by the defendant to require plaintiff to prove each individual item of the account, and if (2) the finder of fact believes plaintiff's evidence. *Id.*, 340 N.E.2d at 794; *Miller v. Schmidt*, (1953) 123 Ind. App. 379, 110 N.E.2d 347, 349. However, if the defendant contests the amounts of the items or invoices, then the plaintiff must prove each individual item or invoice. *Jasper Corp. v. Manufacturers' Appraisal Co.*, (1972) 153 Ind.App. 457, 287 N.E.2d 781; *Babchuk v. Heinold Elevator Co.*, (1969) 144 Ind.App. 328, 246 N.E.2d 211, 217; *Fidelity & Dep. Co. of Maryland v. Standard Oil Co.*, (1936) 101 Ind.App. 301, 199 N.E. 169, 170. The necessary proof is accomplished by proving, as to each item in the account, the date, the correctness of the item, and the reasonableness of the item. 1 Am.Jur.2d *Accounts & Accounting* Sec. 19, p. 393 (1962). This sort of proof is required because when the items or invoices are in dispute, there is no presumption that they are correct. *Johnson v. Jones*, (1916) 62 Ind.App. 4, 112 N.E. 830.

We turn now to the matter before us, keeping in mind that we may reverse the decision only if it is contrary to law. The record contains various invoices submitted by MEP to the Fourteen & Twenty-Four Corp. The invoices were admitted without objection. Fourteen & Twenty-Four Corp. did not object to this manner of proof and did not require proof of each individual item of the account. MEP, therefore, had arguably mustered sufficient proof to take its case to the finder of fact.

At this point, however, MEP still bore the risk of nonpersuasion. Even though counter-evidence might not have been introduced, the fact finder was entitled to find against MEP. *State ex rel. Peters v. Bedwell*, (1978) Ind., 371 N.E.2d 709, 712; C. McCormick, Law Of Evidence 791–92 (2d ed. 1972).

In the case at hand we conclude that the decision of the trial court against MEP was not contrary to law. As we have noted, MEP barely mustered a prima facie case. It did nothing more than introduce certain invoices into evidence. It did not attempt to prove the accuracy or reasonableness of the items on the invoices. Mr. Trier, at deposition, gave only scant information surrounding the invoices. He testified not at all about the accuracy or reasonableness of the invoices. Further, the record does not clearly disclose the dimensions of the oral contract between MEP and the Fourteen & Twenty-Four Corp. or the Yost Cos. Mr. Trier indicated that some of the invoices were for "repairs." However, MEP has not disclosed by citation to the record whether the agreement contemplated repairs, or whether the agreement was limited only to original work. We also note that the pre-trial procedures verified there was a sharp dispute over these issues. MEP, in its pre-trial "contentions" asserted that the invoices represented work that was requested by the Yost Cos. or by Fourteen & Twenty-Four Corp. In contravention, FMI's assertion, contained in the pre-trial order, was that the invoices did *not* reflect work done pursuant to any contract between MEP and the Yost Cos. or the Fourteen & Twenty-Four Corp.

In sum, there was a definite controversy over MEP's attempted recovery for the amount of the invoices. MEP chose not to fully enlighten the trial court about these invoices or the alleged underlying contract. We cannot say, therefore, that the trial court erred by failing to award damages to MEP in the amount of the invoices.

## I.

▮ Even though the trial court determined that MEP's liens were invalid, the court nonetheless awarded damages to MEP in the amount of $32,268.80. This is the amount which MEP had claimed in its lien of April 14, 1976. MEP argues that this recovery should be enlarged by the addition of interest pursuant to IC 24–4.6–1–103. We disagree.

The statute authorizes interest "from the date an itemized bill shall have been rendered and payment demanded on an account stated . . . ." MEP says that it has an "account stated" with the Yost Cos.

Whether an account is stated or not is a question of fact. *Bosson v. Brash,* (1916) 63 Ind.App. 86, 114 N.E. 6, 8; 1 C.J.S. *Account Stated* § 65a (1936). MEP had the burden to prove that the account was stated. MEP failed to carry the burden and suffered a negative judgment. We can reverse only if the trial court's decision was contrary to law. *Umbreit v. Chester B. Stem, Inc.,* (1978) Ind.App., 373 N.E.2d 1116, 1117, *supra.*

An account stated is an agreement that the items of account and the balance struck are correct, together with a promise, express or implied, to pay the balance. *Walsh v. Fulton County Farm Bur. Co-Op. Assoc.,* (1969) 146 Ind.App. 42, 252 N.E.2d 609, 612. To demonstrate reversible error, MEP must show that the facts of this case would force a reasonable person to conclude that an account stated was created. However, MEP sinks its own argument by failing to cite a single page of the record purporting to show facts establishing an account stated. Our own survey of the record, which we were not required to make, convinces us

that the trial court could properly conclude that there was no account stated. Furthermore, the invoices on which MEP relies to support its recovery of $32,268.80 actually total in excess of that amount. Although MEP has not explained the discrepancy, the difference evidently represents the amount which MEP had been paid. MEP left the trial court at a loss to determine when the payment or payments had been made. Thus, MEP never disclosed the dates on which the unpaid balance or balances became due. Absent this information, the trial judge would be unable to award interest in the manner called for by IC 24–4.6–1–103.

This review of the record convinces us that the trial court did not err by failing to award interest. MEP failed to prove at trial the existence of an agreement underlying the alleged account stated. Equally important, MEP totally failed to disclose the dates on which the precise amounts became due to MEP. Without this information, the trial court justifiably refused to award interest.

## J.

MEP asserts that the interest it claims under IC 24–4.6–1–103 should be secured by MEP's lien against the realty. This argument was not included in the motion to correct errors and is waived. T.R. 59(G). In any event, the issue is moot because we have previously determined that MEP has neither the right to interest nor does it have a lien.

## K.

▮ Environmental Contractors, Inc., recovered judgment against MEP for $4,334.50. Environmental was a subcontractor of MEP. MEP acknowledges that it owes $3,700.00 to Environmental, but disputes the remainder. The balance consists of a $250.00 charge for materials and $384.50 for a service charge or interest.

The material in dispute had been delivered by Environmental to the job site but then carted off by unknown persons. Envi-

ronmental sent an invoice to MEP for the amount of $250.00 to recover the cost of the material. MEP did not inform Environmental at that time that MEP disputed the billing. Mr. Trier of MEP testified that he simply tossed the invoice in the wastebasket.

We believe that the trial court's award of the $250.00 may be sustained upon the basis of an account stated. An accounted stated, as previously noted, is an agreement that the items of account and the balance struck are correct, together with a promise, express or implied, to pay the balance. *Walsh v. Fulton County Farm Bur. Co-Op. Assoc.,* (1969) 146 Ind.App. 42, 252 N.E.2d 609, 612, *supra.*

In the case at hand, the record does not disclose that MEP seasonably objected to Environmental that the invoice was in error. Failure to object within a reasonable time justifies an inference by the finder of fact that MEP has assented to the account. *First Nat. Bank of Tipton v. Peck,* (1913) 180 Ind. 649, 103 N.E. 643, 646; *Walsh v. Fulton County Farm Bur. Co-Op. Assoc., supra; Bosson v. Brash,* (1916) 63 Ind.App. 86, 114 N.E. 6, 7, *supra.* Where, as here, the inference is justified, MEP can impeach the account only by a show of fraud or of some mistake other than that brought about by MEP's own indifference. *State Life Ins. Co. v. Postal,* (1908) 43 Ind.App. 144, 84 N.E. 156, 157; Annots., "Conclusiveness of Account Stated," 11 A.L.R. 586 (1921); 75 A.L.R. 1283 (1931); 1 C.J.S. *Account Stated* § 43a (1936). In the case at hand, the account was simple; MEP had an opportunity to straighten out any misunderstanding at once; there is no indication that Environmental intended to deceive MEP. All these factors would justify a conclusion by the finder of fact that MEP had not impeached the account. 1 C.J.S. *Account Stated* §§ 49, 50 & 51 (1936).

Undaunted, MEP assails the award of the $250.00 on the basis of Trier's testimony that the risk of loss of the material was on Environmental. Trier said this was the custom and practice of the industry. The trial court would be justified in rejecting this defense as a tardy attempt to impeach the account. Furthermore, an alleged custom or usage must be proved like other facts "when they have not risen to the dignity of the law." *City Dairy Co. v. Uservo,* (1936) 101 Ind.App. 375, 199 N.E. 457, 459. MEP has offered no authority to establish the alleged custom or usage as a matter of common law. *See Spears v. Ward,* (1874) 48 Ind. 541, 545. If MEP sought to carry its argument as a matter of fact, it had the burden of proof. *Western State Bank of South Bend v. First Union Bank & Trust Co. of Winamac,* (1977) Ind. App., 360 N.E.2d 254, 258. MEP did not carry the burden. Given our standard of appellate review, we cannot conclude that Trier's testimony is so compelling as to force us to conclude that the trial court erred by rejecting Trier's brief comment. This is especially true when Trier had not promptly conveyed his objection to Environmental.

In its reply brief, MEP invokes the aid of the Uniform Commercial Code in an attempt to overturn the $250.00 award. Whether the U.C.C. applies to contracts in the construction field depends upon the facts and circumstances of each particular case. 3 *Bender's Uniform Commercial Code Service* § 1.03[1] (1978); *Glover School & Office Equip. Co. v. Dave Hall, Inc.,* (1977) Del.Sup., 372 A.2d 221, 223; *Schenectady Steel Co. v. Bruno Trimpoli General Const. Co.,* (1974) 43 App.Div.2d 234, 350 N.Y.S.2d 920; *Mingledorff's, Inc. v. Hicks,* (1974) 133 Ga.App. 27, 209 S.E.2d 661, 662. MEP never adequately disclosed to the trial court the facts and circumstances of this contract. Indeed, it appears that MEP never suggested to the trial court in any manner or fashion that the U.C.C. might apply. We, therefore, refuse to consider at the appellate level whether the U.C.C. applies to the contract.

MEP in its reply brief again disputes the existence of the account stated and directs our attention to *Jasper Corp. v. Manufacturers' Appraisal Co.,* (1972) 153 Ind.App. 457, 287 N.E.2d 781. MEP quotes from this case to support its argument that an

account stated must rest upon mutual agreement. *Id.,* 287 N.E.2d 781, 782. This may be true. We point out, however, that this agreement may be inferred from MEP's failure to object seasonably to the disputed invoice. See our discussion, *supra.* MEP's citation of *Glick v. Seufert Const. & Supply Co.,* (1976) Ind.App., 342 N.E.2d 874, may be disposed of on the same grounds.

Lastly, MEP challenges the $250.00 recovery on the ground that Environmental's pleadings did not allege that theory. We reject this argument because on appeal the pleadings are deemed amended to conform to the evidence. Appellate Rule 15(E); *Foltz v. City of Indianapolis,* (1955) 234 Ind. 656, 130 N.E.2d 650, 665, *supra; Mann v. Schnarr,* (1950) 228 Ind. 654, 95 N.E.2d 138, 141, *supra; Boston v. Chesapeake & O. Ry.,* (1945) 223 Ind. 425, 61 N.E.2d 326, 328, *supra.*

■ MEP also contests the service charge or interest which the trial court awarded to Environmental. This item amounted to $384.50. MEP argues that there was no contract or agreement to impose this charge on MEP. Any error by the trial court in awarding this amount to Environmental is harmless. We have previously determined in this opinion that MEP owed Environmental $250.00. MEP has conceded that it owed an additional $3700.00. This total amount of $3950.00 became due no later than March 17, 1975. Judgment was rendered in favor of Environmental for this amount over twenty-three months later. Pursuant to IC 24–4.6–1–103(b), Environmental was entitled to 8% interest from March 17, 1975, until the date of judgment, February 23, 1977. This amount of interest, in excess of $600, when added to the principal, exceeded the damages actually awarded to Environmental. Consequently, the error, if any, was harmless and serves as no ground for reversal. Ind. Rules of Procedure, Trial Rule 61; Appellate Rule 15(E). MEP challenges this amount of interest but declined to give us any insight as to its calculations.

L.

■ The appellants have brought to our attention that the trial court inadvertently employed an erroneous date in a portion of its judgment. No party has alleged that it was mislead thereby, and appellants have not shown any prejudice. The insignificance of the alleged mistake is shown by appellants' failure to specify it as error in their motion to correct errors, although MEP did make a passing reference. We of course are barred from reversing such a trivial matter. T.R. 61; Appellate Rule 15(E).

■ Finally, at oral argument the appellants claimed that we "must" reverse on certain of the above issues because not all the appellees filed a brief with this court. Appellants are wrong. The usual statement of the rule is that we *may* reverse if the appellants show prima facie error. 2 A. Bobbitt, Indiana Appellate Practice & Procedure 598 (1972). This rule is for the benefit of the court and not the appellants. We have discretion to invoke the rule. "However, even if appellants' brief makes a prima facie showing of error, the court may, in its discretion, not reverse the judgment but consider the questions properly presented and decide the case on the merits." *Id.; see Ralston v. Ryan,* (1940) 217 Ind. 482, 29 N.E.2d 202, 203; *Finerty v. Bryan,* (1938) 214 Ind. 570, 16 N.E.2d 882; *Berkshire v. Caley,* (1901) 157 Ind. 1, 60 N.E. 696. The briefs actually on file enabled us to review the cause adequately.

Affirmed.

CHIPMAN, P. J., and MILLER, J., concur.