## Electro Chemical Engineering and Manufacturing Co. v. Kovatch Truck Center Inc.

*Platte B. Moring III,* for plaintiff.
*Steven M. Cormier,* for defendant.

DAVENPORT, *S.J., specially presiding,* January 31, 1991 — On March 20, 1989 plaintiff initiated a cause of action against defendant seeking $152,988, plus interest and costs, for breach and repudiation of the parties alleged agreement, and $5,300, plus interest, for labor and materials furnished for 10 units already completed.

By order dated November 8, 1990, the undersigned entered summary judgment for defendant and against plaintiff on counts I and II of plaintiff's complaint, and further ordered that summary judgment be entered for plaintiff and against defendant on count III of plaintiff's complaint in the amount of $5,300.

Plaintiff appeals.

### FACTUAL BACKGROUND

Plaintiff and defendant have stipulated to the following agreed statement of facts:

(1) On or about February 2, 1988, plaintiff issued to defendant its proposal to furnish labor and materials to fabricate and install a 3/32-inch-thick plasticized PVC sheet lining to the internal areas of water tanks on P-2 crash trucks at defendant's facility at Nesquehoning, Pennsylvania, for the price of $5,300 per unit for 120 units.

(2) By letter dated February 29, 1988, plaintiff at the request of defendant provided additional cost information concerning its February 2, 1988 proposal.

(3) On or about March 28, 1988, plaintiff at the request of defendant completed and furnished to defendant a "Contract Pricing Proposal Cover Sheet" relating to the lining of the P-2 water tanks.

(4) On or about August 1, 1988, defendant issued to plaintiff its purchase order for plaintiff to furnish labor and materials for the lining of the water tanks on the P-2 crash trucks.

(5) Defendant's August 1, 1988, purchase order stated that the work was to be performed by plaintiff "as required."

(6) On or about August 9, 1988, plaintiff issued to defendant an order acknowledgment relating to defendant's August 1, 1988 purchase order.

(7) The order acknowledgment, dated August 9, 1988, stated, in part, that plaintiff's price "is based on doing two tanks per month for 60 months and will be firm for a three-year period. . ."

(8) The parties entered into a contract whereby plaintiff was to furnish the labor and material described in its proposal at the price of $5,300 per unit.

(9) Plaintiff commenced work under the contract during the month of August 1988 and completed 10 units before the end of October 1988.

(10) By letter dated August 19, 1988, plaintiff notified defendant, among other things, that its proposal was based on a minimum of two trailers per

month, working five days per week, excluding Saturdays, Sundays and holidays.

(11) Plaintiff temporarily discontinued performance under the contract in October 1988. See paragraph 13.

(12) During the months of October and November 1988, defendant made several requests by telephone that plaintiff resume performance under the contract. Plaintiff rejected these requests and responded that it did not have sufficient personnel to resume the work at that time.

(13) By letter dated November 3, 1988, plaintiff stated to defendant that the 10 units already completed had fulfilled plaintiff's contractual obligations through the end of December 1988, and further stated that plaintiff did not anticipate having personnel available to continue performing the contract until January 1989.

(14) By letter dated December 2, 1988, defendant notified plaintiff that it was terminating the contract between plaintiff and defendant effective immediately for the reasons stated therein.

(15) By letter dated December 5, 1988, plaintiff notified defendant that it would have personnel available to work on the contract as of December 7, 1988.

(16) The parties stipulate that plaintiff's damages in this action are $38,300 ($300 per unit for 110 units plus $5,300 unpaid for one unit), and defendants have zero damages on their counterclaim.

## ISSUE ON APPEAL

*Whether the Agreement Between the Parties Is Governed by Common Law or Pennsylvania Uniform Commercial Code — Sales*

Plaintiff alleges that since the agreement provides that plaintiff was to supply defendant with specially

manufactured goods, it was a contract for the sale of goods under the Pennsylvania Commercial Code. This court disagrees.

Title 13 Pa.C.S. §2102 is the applicable statute. Section 2102 deals with the scope of the Uniform Commercial Code — Sales. It provides, in part, "Unless the context otherwise requires, this division applies to transactions in goods. . ."

Goods are defined by 13 Pa.C.S. §2105(a). It provides, in part, "'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale. . ."

Initially, this court must ascertain whether the subject matter of the contract was movable at the time of its identification to the contract. The facts indicate that plaintiff proposed to furnish labor and materials to fabricate and install a 3/32-inch-thick plasticized PVC sheet lining to the internal areas of water tanks on P-2 crash trucks.

There is nothing in the record which indicates that the materials were movable at the time of their identification to the alleged contract. Moreover, there is nothing to indicate that plaintiff was ever the seller of the liners.

The facts, however, do indicate that there is a mixed proposal where plaintiff was to provide both materials and labor (services). Generally, it is said that where materials are furnished or consumed in connection with the rendering of services, the contract will ordinarily be considered to be outside the coverage of the Uniform Commercial Code.* *Glover School and Office Equipment Co. Inc. v. Dave Hall Inc.,* 372 A.2d 221 (Del. Super. 1977). Clearly, not every mixed contract is outside the statute. *Id.* at 223.

---

* Please note citations to the Uniform Commercial Code are analogous to the Pennsylvania Commercial Code.

Further, where a mixed contract is involved, it is necessary that the court review the factual circumstances surrounding the negotiation, formation and contemplated performance of the contract to determine whether the contract is predominantly or primarily a contract for sales of goods or for services. *Id.* at 223.

Also, the relationship of the cost of goods to the total contract price is one factor to consider in determining whether the contract is predominately for services or the sale of goods. Clearly, in the instant matter, as to the circumstances surrounding the contract, the installation (labor) is the predominant factor. This is what the dispute is about. Plaintiff alleges that the agreement required the lining of two tanks (units) per month for 60 months. Conversely, defendant alleges that installation would be "as required."

As to the price breakdown, the cost breakdown sheet shows that labor costs are $3620 and direct costs (materials, etc.) are $1447. This indicates that the contract is predominately for services and not the sale of goods.

Plaintiff's contention that since the agreement provides that plaintiff was to supply defendant with specially manufactured goods, it was a contract for the sale of goods under the Pennsylvania UCC Sales Act, is without merit.

In the case of *Lincoln Pulp and Paper Co. Inc. v. Dravo Corporation,* 436 F.Supp. 262 (1977), the action arose from an engineering and construction contract under which defendant Dravo Corporation agreed to design and construct a new heat and chemical recovery boiler and associated equipment to modify the existing chemical recovery system at the Kraft Pulp Mill. *Lincoln Pulp & Paper Co.* is similar to the instant case. In the instant case, plaintiff presented a proposal to defendant where it

would furnish defendant with a 3/32-inch-thick plasticized PVC sheet lining for the internal areas of water tanks on P-2 crash trucks.

In determining the applicability of the UCC, the court in *Lincoln Pulp & Paper Co., supra,* held that a contract which is predominantly for the rendition of services, even though it involves the furnishing of equipment, is not a transaction in ''goods'' and therefore not governed by Article 2 (UCC). The court further held that the contract is a typical engineering construction contract involving predominantly the rendition of services, not the sale of goods. As such, it falls outside the scope of Article 2 (UCC).

*Lincoln Pulp & Paper Co.* suggests that the presence of design or engineering services, rather than mere installation services, may tip the thrust of the proposal toward the services side. Thus, by proposing to furnish defendant with 3/32-inch sheet lining plaintiffs were merely providing engineering design services to defendant and not the sale of goods.

Since the Pennsylvania UCC does not apply, a brief discussion of the common law as it pertains to contracts is warranted.

The first determination by the court is whether the parties in fact entered into a contract. This court has determined that there was no contract. A discussion of the element of mutual assent (offer and acceptance) is all that is necessary in this matter.

Mutual assent is where the parties agree to the same bargain — basically a meeting of the minds. In order for an offer to be present the offer must be definite and certain.

Terms of delivery are an essential element of an offer. Clearly, in the instant case, the element of delivery warrants a discussion. The facts indicate that plaintiff's proposal was based upon lining two

tanks per month for 60 months. Conversely, defendant's purchase order provided that delivery would be "as required" by defendant.

At this point, it is evident that defendant's purchase order was a counteroffer. Because the terms of the purchase order changed the terms of the delivery in the original proposal it was a rejection of plaintiff's offer. As such, no agreement was ever entered into.

Lastly, in order to avoid any unjust treatment the undersigned entered summary judgment for plaintiff on count III in the amount of $5,300, which is the amount owing plaintiff on the 10 trucks (units) it completed, in spite of the lack of a contract.

## CONCLUSION

For all the foregoing reasons this court's order of November 8, 1990 should be affirmed.