Fred WEISMAN, Mark Weisman, Dennis
Weisman, Weisman Farms,
Defendants–Appellants,

v.

HOPF–HIMSEL, INC.,
Plaintiff–Appellee.

No. 63A01–8807–CV–00228.

Court of Appeals of Indiana,
First District.

Jan. 5, 1989.
Rehearing Granted March 20, 1989.

Roger S. Curry, Jasper, for defendants-appellants.

John S. Chappell, Chappell & Birk, Jasper, for plaintiff-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Fred Weisman, his sons Mark and Dennis Weisman, and Weisman Farms appeal the judgment of the trial court finding them jointly and severally liable to Hopf–Himsel, Inc. for $13,582.00 in tractor repair and rental costs. We reverse and remand for a new trial.

## FACTS

Hopf–Himsel, Inc. was engaged by Fred Weisman of Weisman Farms to repair a Case 2670 tractor in April 1987. Hopf–Himsel had become a certified Case dealer in February 1985, but had over ten years experience in repairing tractors made by other manufacturers including International Harvester. Hopf–Himsel first repaired an oil leak on the right front planetary drive of the tractor which involved the installation of new seals and bearings on both sides, a new shaft on one side only and rebuilding one side. Hopf–Himsel charged Weisman Farms $2,285.27 for this repair.

On April 27, 1987, Mark Weisman contacted Vernon Bridgewater, Hopf–Himsel's service manager, and told him that the tractor was emitting excessive smoke and knocking noises. Mark instructed Bridgewater to inspect the tractor and to contact him when Hopf–Himsel had determined what was wrong with the tractor. Mechanics at Hopf–Himsel discovered that the head had been cracked due to a valve which was embedded in a piston. Hopf–Himsel ordered a new head and a new sleeve and piston kit. When the new sleeves did not seat correctly, Hopf–Himsel contacted a Case service representative who advised the Hopf–Himsel mechanics that a counterbore would have to be cut into the block. Hopf–Himsel did not have the tool necessary to undertake this task, therefore, Kixmiller, another Case dealer, cut the counterbore. In order to cut the counterbore, the other two heads had to be removed. While removing these heads, mechanics at Hopf–Himsel discovered two additional cracked pistons and badly worn rod bearings. Also, the crank shaft had to be polished or ground.

At this point Bridgewater contacted Mark Weisman by two-way radio and explained to him the extent of the defects in the tractor. Mark Weisman told Bridgewater to remove the pistons and sleeves and do a block overhaul. Bridgewater gave an estimate of $2,500 to $3,000 for completing this work. On April 30, 1987, Bridgewater drove to the Weismans' farm and explained to Fred and Mark that the engine had to be completely removed from the tractor so that the crank shaft could be removed and polished. The cost of this job was not discussed. While the engine was being overhauled by Hopf–Himsel, Mark Weisman asked Bridgewater to check the power shift transmission. No estimates were given. Hopf–Himsel rebuilt the transmission and the power shift control. The tractor was delivered to Weisman Farms on May 16, 1987. Hopf–Himsel charged $6,944.04 for these repairs.

On May 17, 1987, Mark Weisman called Hopf–Himsel to ask if the tractor should be operated when the tractor was "shifting so severely". Record at 248. On May 18, a Hopf–Himsel mechanic went to Weisman Farms and worked on the tractor's air-conditioner and powershift. Hopf–Himsel charged $316.38 for this service.

During the period between April 27, 1987, and May 16, 1987, the Weismans rented a replacement tractor from Hopf–Himsel. The Weismans were charged $3,844.60 for this service. Furthermore, the Weismans' tractor was equipped with a spray system consisting of herbicide tanks mounted to the front of the tractor from which the Weismans' fields could be sprayed while the fields were disked. The replacement tractor was not equipped with spraying equipment. Therefore, the Weismans were forced to employ Jasper Plant Foods to spray the fields. Jasper sprayed 216 acres at the rate of $4.75 per acre. The Weismans sprayed the remainder of their 511 acres themselves. The Weismans testified that spraying their acreage in this manner cost approximately $2,432.00.

In June 1987, Hopf–Himsel sent the Weismans a bill for $13,567.75 including finance charges. The Weismans refused to pay this amount. On July 21, 1987, Hopf–Himsel filed a mechanics lien against the Weismans' tractor for the same amount. Another invoice was sent to the Weismans on July 25, 1987, for $13,710.93 including additional finance charges. Again the Weismans refused to pay claiming that the tractor was not properly repaired and that the tractor had sustained additional defects

while in the possession of Hopf–Himsel. The Weismans did offer to allow Hopf–Himsel to keep the tractor in satisfaction of the repair debt and later offered a partial payment in satisfaction of the whole. Both offers were declined by Hopf–Himsel.

On July 30, 1987, Hopf–Himsel filed a complaint naming Fred Weisman as the defendant which requested that the Weismans' tractor be sold in satisfaction of the mechanic's lien and that judgment on account be entered in favor of Hopf–Himsel for $13,710.93. The Weismans counterclaimed alleging fraud, breach of contract, breach of warranty, and negligence against Hopf–Himsel. On April 5, 1988, the trial court entered judgment in favor of Hopf–Himsel for $15,582.29 including attorney's fees, but allowing a set-off of one-half the amount owed by the Weismans for tractor rental because the trial court found Hopf–Himsel to have been in possession of the Weismans' tractor for an unreasonable length of time.

### ISSUES

The Weismans present seven (7) issues for review. However, since we reverse based on the following alleged error, we will discuss only that issue.

Did the trial court err in admitting into evidence plaintiff's exhibits 1, 2, and 9?

### DISCUSSION AND DECISION

The Weismans contend that Hopf–Himsel's exhibits 1, 2, and 9 were admitted into evidence erroneously. Specifically the Weismans claim that the admission of plaintiff's exhibits 1 and 2 violated the best evidence and hearsay rules, and that the admission of plaintiff's exhibit 9 violated the best evidence rule. We note that the Weismans' counsel made sufficiently specific objections to the admission of these exhibits at trial, thereby preserving the issue of their admissibility for appellate review.

Hopf–Himsel's exhibits 1 and 2 were invoices purporting to represent items for which the Weismans were billed for the repair of their tractor. The foundation for these exhibits was the testimony of Charles Hopf, co-owner of Hopf–Himsel. Hopf testified that Hopf–Himsel employees fill out a job order which has three copies; two copies are forwarded to the parts department and the other copy stays with the service manager. Mechanics and technicians prepare a separate time ticket on which they record how much time they labor for individual customers. A copy of the time ticket is attached to the service manager's copy of the job order. The service manager totals the time ticket, then gives this information to the office personnel. The office personnel enter this information into a computer. Also entered is the cost reflected on the parts department job order copy. The computer generates a statement reflecting the amount owed by the customer for the service performed. These computer generated statements are the invoices Hopf–Himsel offered into evidence.

The Weismans' raised hearsay and best evidence objections to the admission of the invoices into evidence. Both objections were overruled by the trial court. Because we hold that the trial court erred in admitting these exhibits over the Weismans' hearsay objection we will address only this issue in regard to exhibit numbers 1 and 2.

The initial inquiry to be resolved is whether or not the invoices constituted hearsay evidence. Written evidence of a statement made out of court which is offered to prove the truth of the matter asserted therein and which depends upon the credibility of an out-of-court asserter for its value is hearsay evidence. *Baker v. Wagers* (1984), Ind.App., 472 N.E.2d 218, 110, *trans. denied, quoting* McCormick on Evidence (2d Ed.1972), p. 584. In the present case, the invoices summarize information taken from a variety of written sources, none of which was entered into evidence. Furthermore, the invoices were introduced as evidence of the amount owed Hopf–Himsel by the Weismans. Therefore, the invoices clearly constituted hearsay evidence.

However, our inquiry does not end here, we must next determine whether or not one of the exceptions to the hearsay rule is

applicable to the invoices. The trial court in overruling the Weismans' hearsay objection stated that he felt the invoice was a record kept in the ordinary course of business. Under the business records exception to the hearsay rule, the invoices were not subject to exclusion by the trial court.

■ In order for a document to be admitted under the business record exception to the hearsay rule, the party offering the document into evidence must show that it is an original or first permanent entry made in the routine course of business, at or near the time of the recorded transaction by one having both a duty to so record and personal knowledge of the transaction represented by the entry. *Wilson v. Jenga Corp.* (1986), Ind.App., 490 N.E.2d 375, 376; *Baker v. Wagers* (1984), Ind.App., 472 N.E.2d 218, 221, *quoting, American United Life Ins. Co. v. Peffley* (1973), 158 Ind.App. 29, 36–37, 301 N.E.2d 651, 656. Furthermore, the document must be identified by its entrant or one under whose supervision the record is kept. *Wilson*, 490 N.E.2d at 376.

■ In the present case, the Weismans' contend that because the invoices were not the original or first permanent entries, their admission into evidence was in error. The original entries were the time tickets produced by the mechanics and the job orders itemizing which parts were used in repairing the Weismans' tractor. While a certain number of the time tickets relating to the second invoice, plaintiff's exhibit 2, were admitted into evidence as defendants' exhibit B, these incomplete entries are insufficient to make the admission of the invoices into evidence merely cumulative. *Cf., Matter of Estate of Palamara* (1987), Ind.App., 513 N.E.2d 1223, 1231; *Barrow v. Talbott* (1981), Ind.App., 417 N.E.2d 917, 926. We also note that no effort was made by Hopf–Himsel to show that the original entries were too voluminous to make their admission into evidence impractical or confusing. Therefore, this court will not uphold the admission into evidence of the invoices based on that exception to the hearsay rule. *Cf., Floyd v. Jay County*

*Rural Electric Membership Corp.* (1980), Ind.App., 405 N.E.2d 630, 634.

We next examine plaintiff's exhibit 9, a summary of the Case Flat–Rate Manual prepared by Bridgewater, the service manager at Hopf–Himsel. The Weismans objected to the admission of this document at trial on the grounds that it was not the original Case Flat–Rate Manual and therefore its admission violated the best evidence rule. The trial court overruled this objection.

■ The admission of secondary evidence absent a showing that a diligent search was made to locate the original document violates the best evidence rule. *Cua v. Ramos* (1982), Ind., 433 N.E.2d 745, 753; *Marksill Specialties, Inc. v. Barger* (1981), Ind.App., 428 N.E.2d 65, 68, *trans. denied.* It is within the discretion of the trial court to make the preliminary factual determination of whether an adequate showing of diligence has been made, and the trial court's determination will be disturbed only upon a showing of an abuse of discretion. *Marksill Specialties*, 428 N.E.2d at 68. In the present case, no showing was made as to any efforts undertaken by Hopf–Himsel to locate the original Case Flat–Rate Manual. In fact, Hopf–Himsel never claimed the manual was lost or unavailable. Bridgewater noted that the Case Flat–Rate Manual was kept at Hopf–Himsel and simply provided the summary in its stead. Therefore, the trial court abused its discretion in admitting plaintiff's exhibit 9.

■ As correctly noted in Hopf–Himsel's appellate brief, Indiana Rules of Procedure, Trial Rule 61 prohibits this court from reversing a case based on the erroneous admission of evidence unless the failure to do so would be inconsistent with substantial justice. However, a key element in a suit to foreclose a mechanics lien is the reasonable value of the labor and materials provided. *Wilson*, 490 N.E.2d at 376. The absence of other evidence of the reasonableness of the Hopf–Himsel repair bill made it necessary for the trial court to

rely on plaintiff's exhibits 1, 2, and 9, in making its decision as to the extent of the Weismans' liability. The exclusion of these exhibits leaves an evidentiary void on this issue. Therefore, in the present case, upholding the trial court's judgment despite the erroneous admission of critical evidence would be inconsistent with substantial justice.

REVERSED AND REMANDED FOR A NEW TRIAL.

NEAL and STATON, JJ., concur.