Fred **WEISMAN, Mark Weisman, Dennis Weisman, Weisman Farms, Defendants–Appellants,**

v.

**HOPF–HIMSEL, INC., Plaintiff–Appellee.**

No. 63A01–8807–CV–00228.

Court of Appeals of Indiana, First District.

March 20, 1989.

Roger S. Curry, Jasper, for defendants-appellants.

John S. Chappell, Chappell & Birk, Jasper, for plaintiff-appellee.

ON PETITION FOR REHEARING

RATLIFF, Chief Judge.

Fred Weisman, his sons Mark and Dennis Weisman, and Weisman Farms appealed the judgment of the trial court finding them jointly and severally liable to Hopf–Himsel, Inc. for $13,582.00 in tractor repair and rental costs. On review this court held that plaintiff's exhibits one and two constituted hearsay evidence and, therefore, were inadmissible. *Weisman v. Hopf–Himsel, Inc.* (1989), Ind.App., 532 N.E.2d 29, 32. We rejected Hopf–Himsel's argument that both exhibits should be admitted under the business records exception to the hearsay rule. *Id.* We held that the handwritten summaries were not the original or first permanent entries as required under the business records exception to the hearsay rule, and therefore found the exhibits to be inadmissible. *Id.* After further reflection we are persuaded that our original opinion is in need of modification. Therefore, we grant rehearing for that purpose and to address the remaining issue.

We note first that Hopf–Himsel was correct in stating that we made a factual error in the discussion section of our original opinion. *Weisman* at 31. We inaccurately described the process by which Hopf–Himsel's exhibits one and two were compiled. *Id.* The following is a revised description of that process.

Hopf–Himsel's exhibits one and two were invoices purporting to represent items for which the Weismans were billed including parts and labor for the repair of their tractor. Attached to the handwritten invoices were computer generated statements listing the parts used in the tractor repair and their prices. The foundation for the admission of exhibits one and two was

the testimony of Charles Hopf, co-owner of Hopf–Himsel. Hopf testified that Hopf–Himsel employees fill out a job order which has three copies; two copies are forwarded to the parts department and the other copy is retained by the service manager. Mechanics and technicians prepare a separate time ticket on which they record how long they labor for each customer. A copy of this time ticket is attached to the service manager's copy of the job order. The service manager totals the labor charges and forwards his copy of the job order to the parts department. A listing of the parts used on a particular job is also attached to the job order. The job order is then forwarded to the general office. Hopf testified that office personnel prepare a billing statement with the aid of a computer, based on the information forwarded. Exhibits one and two each consist of a hand-written summary of the parts and labor charges billed to the customer. Attached computer printouts detailing the parts used in the repair are included in each exhibit. No labor time tickets are attached.

 Our original opinion held that exhibits one and two should not have been admitted into evidence under the business records exception to the hearsay rule because the hand-written invoices were based on information derived from sources not in evidence. One of these sources, the labor time tickets, was never introduced into evidence by Hopf–Himsel and only token examples of the tickets were eventually admitted as defendant's exhibit C. The few time tickets entered certainly fell short of the labor charges noted on the invoices. Another source of information used in preparing the invoices was the attached set of computer printouts detailing the parts used in the repair effort. While admitted as part of plaintiff's exhibits one and two, it is our opinion that an inadequate foundation was laid for the admission of these printouts.

We are fully cognizant of the fact that evidentiary inroads have been made concerning the admission of computer printouts and understand that modern record keeping techniques rely heavily on the use of computers. In recent cases we have upheld the admission into evidence of certain computer generated documents, but only where a proper evidentiary foundation has been provided at the trial level. *See e.g., Hatton v. State* (1986), Ind.App., 498 N.E.2d 398, 400. The Indiana Supreme Court has also approved the admission into evidence of business records which are stored in a computer and electronically printed out on demand, but only where a sufficient foundation is laid. *See e.g., Allen v. State* (1982), Ind., 439 N.E.2d 615. Quoting *Brandon v. State* (1979), 272 Ind. 92, 98, 396 N.E.2d 365, 370, the Supreme Court stated:

"[I]t must be shown that the electronic computing equipment is standard, that the entries are made in the regular course of business at or reasonably near the time of the happening of the event recorded, and that the testimony satisfies the court that the sources of information and method and time of preparation were such as to indicate its authenticity and accuracy and justify its acceptance as trustworthy."

*Allen,* 439 N.E.2d at 617. In the present case, no attempt was made to show that the printouts were the product of a standardized computer system. Absent this showing a proper foundation was not laid for the admission of the printouts, and the trial court erred in admitting the printouts into evidence.

 In our prior opinion we failed to note that the computer printouts of the parts used were inadmissible for lack of a proper foundation, however, we did hold that the failure to include the time tickets upon which the labor charges were based was fatal to the admission of exhibits one and two. On rehearing we have found all supporting documentation of the invoices to be either inadmissible or unavailable to this court. Therefore, the question becomes whether or not an invoice is admissible into evidence where the document merely summarizes the charges levied against the Weismans. If such invoices are admissible, the admission of the computer printouts constituted harmless error. Indiana Rules of Procedure, Trial Rule 61;

*and see Palamara v. Palamara* (1987), Ind.App., 513 N.E.2d 1223, 1231–32.

After careful consideration of the issue we hold that such invoices are properly admissible into evidence. See, *Herman v. Steamboat Springs Super 8 Motel* (1981), Colo.App., 634 P.2d 1005, 1007, (Invoices prepared from employee time sheets found to be admissible as records kept in the ordinary course of business.); *E.N. Nason, Inc. v. Land–Ho Dev. Corp.* (1979), Me., 403 A.2d 1173, 1179, (Regularly prepared summaries made at or near the time of the transaction based on information supplied in the president's daily notes were held to be admissible into evidence as were invoices prepared from such summaries.); *Theiseen–Nonnemacher, Inc. v. Dutt* (1986), Minn.App., 393 N.W.2d 397, 400, (Bills and summary listings may be acceptable evidence even without the inclusion of underlying support.); *AMF, Inc. v. Mravec* (1981), 2 Ohio App.3d 29, 33, 440 N.E.2d 600, 605, (Invoices are admissible into evidence if they qualify as business records.); *Marquis Const. Co. v. Johnson Masonry* (1983), Tex.App., 665 S.W.2d 514, 514–516.[1]

In *Marquis Construction,* the Court of Appeals of Texas was presented with a situation analogous to that presently before this court. The Texas court also was initially concerned with the plaintiff's failure to prove the "underlying source" of the invoices presented. *Marquis Construction,* 665 S.W.2d 514. A subcontractor had introduced invoices into evidence which were based on data received from foremen, and discarded notes and memoranda. *Id.* at 516. Upon rehearing, the court held that an invoice, which is in itself a business record, should not be treated as a summary of business records and is admissible if a proper foundation is laid. *Id.* at 515. After reviewing the record in the present case, we conclude that the handwritten invoices are original business records in and of themselves. Therefore, providing a proper foundation was laid, the invoices are admissible into evidence.

■ In order for a document to be admitted into evidence under the business records exception to the hearsay rule, the party offering the document into evidence must show that it is an original or first permanent entry made in the routine course of business at or near the time of the recorded transaction by one having both a duty to so record and personal knowledge of the transaction represented by the entry. *Wilson v. Jenga Corp.* (1986), Ind.App., 490 N.E.2d 375, 376; *Bak-*

---

1. These cases, with the exception of *Marquis Construction,* are based on statutory rules of evidence which are identical to or extremely similar to Fed.Rules of Evidence, Rule 803(6) which reads as follows:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

*Marquis Construction* is based on Tex.Rev.Civ. Stat.Ann. art. 3737e, § 1 (Vernon 1989 Supp.) which reads as follows:

"Sec. 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

"(a) It was made in the regular course of business;

"(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

"(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter."

Texas has since repealed this statute and now follows a rule identical to F.R.E. 803(6). While Indiana is governed by common law rules of evidence, it is our opinion that our business record exception to the hearsay rule is sufficiently analogous to the statutory rules cited above to warrant our finding their authority persuasive in this matter.

*er v. Wagers* (1984), Ind.App., 472 N.E.2d 218, 221, *trans. denied, quoting, American United Life Ins. Co. v. Peffley* (1973), 158 Ind.App. 29, 36–37, 301 N.E.2d 651, 656, *reh. denied,* 158 Ind.App. 29, 43, 306 N.E.2d 131, 132. Furthermore, the document must be identified by its entract or one under whose supervision the record is kept. *Wilson,* 490 N.E.2d at 376.

 Hopf demonstrated a detailed knowledge of how the invoices were prepared. His testimony was sufficient, therefore, to identify the invoices. *Cf, Wilson,* 490 N.E.2d at 377. As noted in the previous paragraph, the invoices were original entries and the testimony shows that such invoices were prepared in the ordinary course of Hopf–Himsel's business. In *Marquis Construction,* the testimony of the subcontractor's owner was sufficient to establish his personal knowledge of the information contained in the daily summaries he prepared, notwithstanding that some of his information was based on oral reports from foremen on the job site. *Marquis Construction,* 665 S.W.2d at 516. Similarly, we find that the office personnel who prepared the Hopf–Himsel invoices possessed the requisite personal knowledge of the transaction despite receiving information from other sources within the business. Finally, the testimony describing the process by which the invoices were prepared indicates that the invoices were prepared within a reasonable time of the actual transaction or repair of the tractor. Therefore, a proper foundation having been laid, we hold that the invoices were properly admitted into evidence by the trial court.

 On review of the record we do not feel compelled to change our ruling regarding the admissibility of plaintiff's exhibit nine, a summary of the Case Rate Manual. Hopf–Himsel's failure to demonstrate that a diligent search was made to locate the original document violates the best evidence rule. *See, Weisman,* 532 N.E.2d at 32. However, as noted in original opinion Indiana Rules of Procedure, Trial Rule 61 prohibits this court from reversing a case based on the erroneous admission of evidence unless the failure to do so would be inconsistent with substantial justice. In the present case the erroneous admission of this document does not warrant reversal. Exhibit nine summarized the number of hours the repairs performed on the Weisman tractor by Hopf–Himsel should take. Charles Hopf and Vernon Bridgewater testified to this fact without objection from the defendants. Therefore, the information offered in the exhibit was merely cumulative, and its erroneous admission into evidence was harmless. *See, In re Wardship of B.C.* (1982), Ind., 441 N.E.2d 208, 212; *Palamara v. Palamara* (1987), Ind.App., 513 N.E.2d 1223, 1231–32.

Because of our decision to reverse and remand in our earlier opinion, we did not reach all the contentions of error raised by the Weismans on appeal. We will now address the remaining issues.

### ISSUES

1. Did the trial court err in refusing to grant the Weismans' request for a jury trial?

2. Is the judgment on the first and second repair efforts, as evidenced by plaintiff's exhibits one and two, supported by sufficient evidence?

3. Did prejudicial irregularity result from the trial court's entry of a judgment against Mark Weisman, Dennis Weisman, and Weisman Farms?

4. Was the trial court's finding that the Weismans failed to carry their burden of proof on their counterclaim for breach of good workmanship and negligence contrary to law?

5. Did the trial court err in denying the Weismans any consequential or actual damages other than set-off on tractor rental for breach of warranty of prompt service?

6. Did the trial court err in its computation of damages by awarding the plaintiff prejudgment interest at the rate of eighteen percent (18%)?

### DISCUSSION AND DECISION

*Issue One*

The Weismans contend that the trial court erred in denying them a trial by jury.

While recognizing that a mechanic's lien is generally held to be equitable in nature, the Weismans argue that Hopf–Himsel's suit was actually a legal claim for damages, and that therefore the Weismans should have been granted a jury trial. The Weismans also argue that should this court find Hopf–Himsel's claim to be equitable in nature, the trial court erred in failing to separate that action from the remaining legal claims, thereby leaving the court free to place the legal issues before a jury. We disagree with both assertions.

■ The right to a jury trial is subject to the determination of whether the case involves an equitable or legal cause of action. Indiana Rules of Trial Procedure, Rule 38(A); *Jones v. Marengo State Bank* (1988), Ind.App., 526 N.E.2d 709, 713. To determine whether or not a party is entitled to a trial by jury, Indiana courts look beyond the label given a particular action and evaluate the nature of the underlying substantive claim. *Valadez v. Capital Enterprises, Ins. Group.* (1988), Ind.App., 519 N.E.2d 1257, 1258; *Midwest Fertilizer Co. v. Ag–Chem Equip. Co.* (1987), Ind.App., 510 N.E.2d 232, 233. While we are aware of recent case law tending to dilute the distinction between law and equity, an action to foreclose a mechanic's lien must still be considered equitable in nature. *Farmers Bank and Trust Co. v. Ross* (1980), Ind.App., 401 N.E.2d 74, 76, *trans. denied; Voorhees–Jontz Lumber Co. v. Bezek* (1965), 137 Ind.App. 382, 398, 209 N.E.2d 380, 388. Noting that statutory liens were based on the theory of unjust enrichment, this court in *Voorhees–Jontz* quoted the Indiana Supreme Court which stated:

"The mechanics' lien laws of America, in general, reveal the underlying motive of justice and equity in dedicating, primarily buildings and the land on which they are erected, to the payment of the labor and materials incorporated, and which have given to them an increased value. The purpose is to promote justice and honesty, and to prevent the inequity of an owner enjoying the fruits of the labor and materials furnished by others, without recompense."

*Voorhees–Jontz Lumber*, 137 Ind.App. at 399, 209 N.E.2d at 388, *quoting, Moore-Mansfield Const Co. v. Indianapolis, Newcastle and Toledo Ry. Co.* (1913), 179 Ind. 356, 372, 101 N.E. 296, 302.

■ The present case fits neatly into the description quoted above; after expending man-power and physical resources in repairing the Weismans' tractor, Hopf–Himsel was not compensated for its efforts. In an attempt to prevent the Weismans from "enjoying the fruits of the labor and materials furnished" absent payment, Hopf–Himsel filed a mechanic's lien on the tractor. That the parties to the transaction disagreed as to how much compensation was due Hopf–Himsel for its efforts does not alter the basic characterization of this action as being a cause in equity. The right to a jury trial in civil cases is guaranteed only in those actions which are essentially legal in nature; equity claims are to be tried by the court. *Midwest Fertilizer*, 510 N.E.2d at 233; *Ballard v. Ballard* (1982), Ind.App., 434 N.E.2d 136, 140; *Lewandowski v. Beverly* (1981), Ind.App., 420 N.E.2d 1278, 1282, *trans. denied.* Hopf–Himsel's foreclosure of the mechanic's lien being equitable in nature, the trial court did not err in refusing to grant the Weismans a trial by jury.

■ The Weismans further claim that even if the portion of Hopf–Himsel's claim dealing with the foreclosure of its lien is equitable, the remaining issues were legal and should have been bifurcated and tried by jury. The Weismans are mistaken. It is a well settled tenet of law that if an essential part of a cause of action is equitable, the rest of the case is drawn into equity. *Jones*, 526 N.E.2d at 713. Once equity has the case, even a counterclaim sounding in law must be tried under the rule of equity; there is no right to trial by jury as to the issues of law. *Berkemeier v. Rushville Nat. Bank* (1984), Ind.App., 459 N.E.2d 1194, 1197; *Farmers Bank*, 401 N.E.2d at 76. Therefore, the trial court did not err in refusing to grant the Weismans a jury trial on the legal issues involved in the present case.

*Issue Two*

██ This action was initiated by the filing of a two count complaint; Count I requested the foreclosure of a mechanics lien and Count II was an action on an open account. At trial there was a dispute as to the actual amount owed by the Weismans to Hopf–Himsel. The trial court entered judgment in the amount of $6,944.05 on the first count representing the cost of the first repair effort and $2,285.27 on the second count representing the cost of the second repair effort. The Weismans claim that the evidence was insufficient to support this judgment.

So long as there is evidence of probative value to support the trial court's findings, they will not be disturbed on appeal. *Glasgo v. Glasgo* (1980), Ind.App., 410 N.E.2d 1325, 1331, *trans. denied.* The invoices reflecting the amount owed by the Weismans, were sufficient to create a prima facie case in an action on open account. *Contech Architects and Engineers v. Courshon* (1979), 180 Ind.App. 77, 87, 387 N.E.2d 464, 470; and *see, Building Systems, Inc. v. Rochester Metal Products, Inc.* (1976), 168 Ind.App. 12, 16, 340 N.E.2d 791, 794. However, where as in the present case, a controversy arises regarding the amounts of the invoices, then the plaintiff is required to prove each individual item or invoice. *Contech,* 180 Ind.App. at 87, 387 N.E.2d at 470; *Building Systems,* 168 Ind.App. at 16, 340 N.E.2d at 794. The necessary proof is accomplished by proving as to each item, the correctness of the item, and the reasonableness of the item. *Contech,* 180 Ind.App. at 87, 387 N.E.2d at 470. Similarly, the key element in a suit to foreclose a mechanic's lien is the reasonable value of the labor and materials provided. *Wilson v. Jenga Corp.* (1986), Ind.App., 490 N.E.2d 375, 376.

In the present case, Charles Hopf testified as to the reasonableness of the labor rates charged by Hopf–Himsel by comparing this rate to that charged by similar repair shops in the area. Vernon Bridgewater testified to the reasonableness of the number of hours used in repairing the tractor and to the necessity of the repairs. The supporting evidence presented was sufficient to uphold the trial court's judgment based on plaintiff's exhibit one and two.

██ The Weismans also argue that the trial court erred in finding that no agreement existed as to the cost of the engine overhaul. The Weismans claim that they authorized the second repair effort at a maximum cost of $3,000.00. The record, however, supports the trial court's finding that Hopf–Himsel's quote of $3,000.00 was merely an estimate. Furthermore, after giving this estimate, a Hopf–Himsel representative contacted the Weismans to tell them that additional work including an engine overhaul needed to be done. The Weismans consented to the additional repairs. While cost was not discussed at this time, it would have been unreasonable for the Weismans to assume that no additional cost would result. Given that probative evidence exists to support the trial court's finding that no agreement as to the cost of the second repair effort was reached by the parties, we will not disturb the trial court's finding on appeal.[2]

*Issue Three*

██ The Weismans next contend that the trial court erred in entering judgment against Weisman Farms and Mark and Dennis Weisman when the only defendant named in Hopf–Himsel's complaint was Fred Weisman. It is true that initially only Fred Weisman in his personal capacity was named as a party defendant. However, incorporated into Hopf–Himsel's trial brief was a request that the pleadings be deemed to conform to the evidence and that judgment be entered against Weisman Farms, and Fred, Mark, and Dennis Weisman as partners in that entity.

---

**2.** In support of their contention on this issue the Weismans rely on the case of *Deck v. Jim Harris Chevrolet–Buick* (1979), 179 Ind.App. 542, 386 N.E.2d 714. Their reliance is misplaced. In *Deck,* the plaintiff sought to recover the value of labor used in making unauthorized repairs on the defendant's automobile. *Id.* In the case at bar, the Weismans consented to the repair work performed by Hopf–Himsel.

Indiana Rules of Procedure, Trial Rule 15(B) allows for the amendment of pleadings to conform to the evidence presented at trial and reads as follows:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

The rationale underlying T.R. 15(B) is to promote relief for a party based upon the evidence actually forthcoming at trial, notwithstanding the initial direction set by the pleadings. *Urbanational Developers, Inc. v. Shamrock Engineering* (1978), 175 Ind. App. 416, 430, 372 N.E.2d 742, 751.

" 'Whether the "issues" to be tried in any lawsuit are formed by the pleadings or in a pre-trial order, their function is merely to provide the parties and the court with an itinerary for the journey through the trial. Either party may timely demand strict adherence to the pre-determined route, or if deviation is permitted, the time necessary to prepare to meet the new issue. *But when the trial has ended without objection as to the course it took, the evidence then controls.* Neither pleadings, pre-trial orders, or "theories" postulated by either party should then operate to frustrate the trier of fact in finding the facts which that evidence (including all reason-able inferences the trier may draw therefrom) convinces him (whether he be a judge or juror), by a preponderance thereof, is true or block him from awarding the relief, if any, which the rules of substantive law say those facts merit.' "
(Emphasis as appears in original). *Indianapolis Transit System Inc. v. Williams* (1971), 148 Ind.App. 649, 658–59, 269 N.E. 2d 543, 550, *trans. denied.*

The Weismans claim that Fred Weisman did object to the course of the trial when, in a pre-trial document entitled Specific Acts of Defense for the Defendant, Fred denied that he, in his personal capacity, entered into any transactions with Hopf–Himsel, Inc. and Weisman Farms, the owner of the tractor. According to the Weismans this constituted an objection to the course the trial eventually followed and, therefore, the pleadings cannot be deemed amended. This argument fails for two reasons. First, the objection was entered prior to trial; during the trial evidence was admitted without objection which tended to show that both Weisman Farms and individual members of the Weisman family were liable for the cost of the tractor repair. In addition, the very objection raised by Weisman only seemed to provide further support for amending the pleadings making it clear to all parties that Weisman Farms was a partnership and that the tractor repaired was partnership property. Thus, no objections having been raised at trial, if the evidence introduced at trial supports a theory of recovery against Weisman Farms and Fred, Mark and Dennis Weisman, then that evidence shall control. *See, Urbanational,* 175 Ind.App. at 431, 372 N.E.2d at 751–752.

In the present case Fred Weisman testified to the fact that Weisman Farms was a partnership, that he was a partner in that partnership and that the tractor repaired by Hopf–Himsel was owned by that partnership. Mark Weisman testified that the tractor was bought by his father, his brother, and himself as "Weisman Farms". Record at 328. The record reveals that both Fred and Mark exercised authority in determining what would be done regarding

the tractor. The record further reveals that no written partnership agreement existed.

■ Absent a written agreement, the provisions of the Indiana Uniform Partnership Act govern the relationships between partners and under that authority each partner is jointly and severally liable for the debts of the partnership. Indiana Code sections 23–4–1–1 *et seq.* The evidence reveals that Weisman Farms was a partnership and that Fred and Mark Weisman were partners in Weisman Farms. The record indicates that all parties to the action were aware of this situation and litigated the issues presented accordingly.[3] Furthermore, both Fred and Mark participated in the trial; notice sent to Weisman Farms apparently was sufficient to notify Fred and Mark of the proceedings. Therefore, it is our opinion that the trial court did not err in considering the pleadings amended and entering judgment against Weisman Farms, and Fred and Mark Weisman. However, as to Dennis Weisman we have found nothing in the record, other than an oblique reference made by Mark Weisman to his unnamed brother's participation in the purchase of the tractor, to tie Dennis Weisman to the partnership. Therefore the judgment entered against Dennis Weisman must be reversed.

*Issue Four*

The Weismans next claim that the trial court's finding that the Weismans failed to carry their burden of proof on their counterclaim alleging breach of good workmanship was contrary to law. The Weismans are appealing from a negative judgment on this issue and are therefore required to demonstrate that the evidence leads unerringly to a result opposite that reached by the lower court. *Steward v. City of Mt. Vernon* (1986), Ind.App., 497 N.E.2d 939, 942.

■ Those who hold themselves out to the world as possessing skill and qualifications in their respective trades impliedly represent that they possess the skill and will exhibit the diligence ordinarily possessed by well informed members of the trade. *Data Processing v. L.H. Smith Oil Corp.* (1986), Ind.App., 492 N.E.2d 314, 319, *reh. denied,* 493 N.E.2d 272. Mark Weisman testified that Hopf–Himsel's workmanship was inadequate based on several problems the Weismans experienced with their tractor throughout and subsequent to the repair efforts. The Weismans contend that Hopf–Himsel failed to present any evidence tending to rebut the allegations made by Mark Weisman.

While Hopf–Himsel did not present evidence which would categorically denounce every allegation Mark made, prior to Mark's testimony Charles Hopf and Vernon Bridgewater did testify at length as to how and why the requested repairs were completed. In finding that the Weismans failed to meet their burden of proof on their counterclaims the trial court was properly exercising its fact finding function and we cannot say that the evidence presented leads unerringly to a conclusion opposite that reached by the trial court. The Weismans are essentially requesting that we now duplicate the trial court's efforts by weighing the evidence and assessing the credibility of the witnesses. This we will not do.

*Issue Five*

The Weismans next claim that the trial court erred in finding that the Weismans failed to demonstrate that any actual or consequential damages arose from Hopf–Himsel's breach of the warranty of prompt service. In particular, the Weismans argue that the trial court erred in not awarding them damages for the costs incurred in acquiring substitute methods for spraying their fields during the period Hopf–Himsel had possession of the tractor.

■ Generally, the computation of damages is a matter within the discretion of the trial court. *Davis v. Eagle Products, Inc.* (1987), Ind.App., 501 N.E.2d 1099, 1108, *trans. denied.* When the specific issue on review relates to questions of inadequate

---

**3.** The Weismans did not allege that amending the pleadings had any impact on the statute of limitations in the present case. Therefore, we need not address that issue on appeal.

or excessive damages, a damage award should not be reversed if it is within the scope of the evidence before the trial court, and the reviewing court may not reweigh the evidence or assess the credibility of witnesses. *Dunn v. Cadiente* (1987), Ind., 516 N.E.2d 52, 54; *Persinger v. Lucas* (1987), Ind.App., 512 N.E.2d 865, 868. Thus, to prevail on their contention that the damage award should be modified, the Weismans must show that the award was clearly erroneous or contrary to law. *Davis*, 501 N.E.2d at 1108.

We note that the Weismans failed to cite any authority in support of their argument on this issue, but rather rely on a rehashing of the evidence presented at trial in an effort to persuade us that the trial court was in error. As correctly stated by the Weismans, the evidence reveals that the Weismans' tractor was outfitted with a spraying apparatus which allowed the Weismans to spray their corn fields as the fields were being cultivated. Without the use of their tractor the Weismans opted to procure an alternative method for spraying. The Weismans also rented a replacement tractor from Hopf–Himsel. At trial Hopf–Himsel denied none of these facts.

■ The trial court apparently reasoned that while Hopf–Himsel did breach the warranty of prompt service, the entire period during which Hopf–Himsel had possession of the tractor could not be deemed to be unreasonable; a certain amount of time was reasonably expended repairing the tractor. The trial court awarded the Weismans one-half the rent paid Hopf–Himsel for the replacement tractor, thus apparently determining that one-half of the time Hopf–Himsel was in possession of the Weisman's tractor was reasonable given the extent and nature of the repair work to be accomplished. It is our opinion that the trial court's finding was within the scope of the evidence.

■ As to the costs incurred in spraying the fields, the record discloses that the Weismans began spraying almost immediately after Hopf–Himsel took pos-

session of the tractor on April 27, 1987. The tractor was returned to the Weismans on May 16, 1987. At trial Mark Weisman testified to the fact that corn can be cultivated as late as June 21 in the region in which he farms. Therefore, the trial court reasonably could have concluded that the Weismans need not have started spraying their fields until their tractor was returned. It is axiomatic that a breaching party is liable only for losses proximately caused by that breach. *Tipton County Abstract v. Heritage Fed. Sav. and Loan Ass'n.* (1981), Ind.App., 416 N.E.2d 850, 853; *Indiana Bell Tel. Co. v. O'Bryan* (1980), Ind.App., 408 N.E.2d 178, 184. Consequential damages should be direct, immediate, and probable, not speculative. *Hudson v. Dave McIntire Chevrolet, Inc.* (1979), 180 Ind.App. 646, 653–654, n. 4, 390 N.E.2d 179, 184, n. 4. Given the facts of this case the trial court could have concluded that the Weismans' spraying costs were not direct and immediate or were not proximately caused by Hopf–Himsel's delay in returning the Weisman tractor. The damage award being within the scope of the evidence presented, we are bound to uphold the findings of the trial court.

*Issue Six*

The Weismans' final contention is that the trial court erred in awarding Hopf–Himsel pre-judgment interest. A statutory provision allows the awarding of prejudgment interest in certain circumstances.[4] The Weismans contend and Hopf–Himsel concedes that statutory prejudgment interest is inappropriate in the present case.

■ However, the statute is not the exclusive authority for prejudgment interest. *Thomas J. Henderson, Inc. v. Leibowitz* (1986), Ind.App., 490 N.E.2d 396, 400. Recovery of prejudgment interest is permitted where damages are liquidated or readily ascertainable by fixed rules of evidence and accepted standards of valuation at the time the damages accrued. *Gibson–Lewis Corp. v. NIPSCO* (1988), Ind.App., 524 N.E.2d 1316, 1319; *Henderson*, 490 N.E.2d at 400; *Nering v. Stockstill* (1983),

---

**4.** Indiana Code section 24–4.6–1–103.

Ind.App., 448 N.E.2d 695, 697, *trans. denied.* When the trier of fact determines that liability for damages exists, prejudgment interest is proper only where a simple mathematical computation is required; it is not proper when the court must determine the value of liability. *Henderson*, 490 N.E.2d at 400; *Nering*, 448 N.E.2d at 697. As Judge Staton wrote in *Indiana Industries, Inc. v. Wedge Products, Inc.* (1982), Ind.App., 430 N.E.2d 419, 427, *trans. denied:*

> "The ascertainable standard is in reference to the amount of damages as distinguished from the liability for those damages. The trier of fact need always exercise its judgment to determine the *liability* for damages. But, prejudgment interest is proper where the trier of fact need not exercise its judgment to assess the *amount* of damages."

(Citations omitted.) (Emphasis added.) In the present case it is clear that after the court found the Weismans liable for the repairs made on their tractor, it merely added the two invoices representing the cost of each repair and the rental charges to ascertain the damages to which Hopf–Himsel was entitled. Since the trial court engaged in mere mathematical computations, the prejudgment interest award was proper.[5] The only remaining question to be addressed is whether or not the trial court erred in setting the prejudgment interest rate at 18% in the present case. Prejudgment interest, computed from the time the principal amount was demanded or due, is allowable at the permissible statutory rate in the absence of a contractual provision specifying the interest rate. *Monroe County Community School Corp. v. Frohliger* (1982), Ind.App., 434 N.E.2d 93, 97. The Weismans argue that there was no contractual agreement concerning interest and that, therefore, the 8% statutory rate was applicable. *See*, Indiana Code sections 24-4.6-1-102 and 103.

Although no specific agreement regarding the terms of the service agreement was admitted into evidence, there was other evidence in the record to support the 18% interest award. Hopf–Himsel's exhibits six, seven, and eight, monthly account statements admittedly received by the Weismans, stated an interest rate of 1½% per month or 18% per year. At trial, upon the admission of Hopf–Himsel's exhibit eight, an invoice reflecting the 18% interest rate, the Weismans' counsel did not object to the admission of the document but stated that "... for the record, we're not waiving our right to contest the amount of interest by not objecting." Record at 231. However, that was the only testimony at trial referring to the interest rate charged by Hopf–Himsel. While the Weismans contested the amount charged for the repairs, no one contended that the interest rate reflected on the invoices admitted into evidence was incorrect. We hold this evidence to be sufficient to support the trial court's award of 18% prejudgment interest. *See, McClure Oil Corp. v. Murray Equipment, Inc.* (1988), Ind.App., 515 N.E.2d 546, 554–55.

AFFIRMED IN PART. REVERSED IN PART.

All costs assessed to Weisman Farms, Fred Weisman, and Mark Weisman.

NEAL and STATON, JJ., concur.

---

5. The Weismans cite to *Thomas J. Henderson, Inc. v. Leibowitz* (1986), Ind.App., 490 N.E.2d 396, in support of their contention that an award of prejudgment interest was improper in the present case. It appears that in *Henderson* the trial court was required to do more than merely calculate damages based on a mathematical formula, but rather, the court exercised its judgment in ascertaining the value of the damage awarded. No such exercise of judgment was required in determining the amount of damages in the present case. Thus, *Nering* and *Indiana Industries* control herein.