HACIENDA MEXICAN RESTAURANT OF KALAMAZOO CORP., Albert Mickelson and Scott Borsodi, Appellants,

v.

HACIENDA FRANCHISE GROUP, INC., Dean Goodwin, Kenneth Zmudzinski, William Shannon, III, Lance Malling and Gary White, Appellees.

No. 71A04–9402–CV–37.

Court of Appeals of Indiana, Fourth District.

Oct. 24, 1994.

Ross E. Chapman, William T. Webb, Deming Hughey Lewis Allen & Chapman, P.C., Kalamazoo, MI, for appellants.

Stephen Hodge, Indiana Securities Com'r, Indianapolis, amicus curiae.

Joseph L. Amaral, Gregg A. Hixenbaugh, Hammerschmidt Amaral & Jonas, Richard B. Urda, Jr., South Bend, for appellees.

## OPINION

CHEZEM, Judge.

### Case Summary

Defendants–Appellants, Hacienda Mexican Restaurant of Kalamazoo Corp., Albert Mickelson, and Scott Borsodi ("Franchisees") appeal the judgment in favor of Hacienda Franchise Group, Inc. ("Franchisor"). We affirm.

### Issues

Franchisees present seven issues for review, consolidated and restated as:

I. Whether the trial court properly required proof of scienter upon Franchisees' counter-claim for franchise fraud.

II. Whether the trial court should have imposed personal liability against the principals of Franchisor.

III. Whether Franchisees' motion for summary judgment on its counter-claim of franchise fraud was improperly denied.

IV. Whether the trial court properly denied Franchisees' demand for a jury trial.

V. Whether the trial court properly denied Franchisees' motion to amend the pre-trial order.

VI. Whether the trial court properly awarded attorney fees to Franchisor.

### Facts and Procedural History

Franchisees and Franchisor are both incorporated in Indiana. On January 5, 1989, Franchisees entered into a franchise agreement with Franchisor for a Hacienda Mexican Restaurant. Franchisees began operating Hacienda Mexican Restaurant of Kalamazoo in October of the same year. Almost immediately, Franchisees fell behind in their royalty payments. After three defaults by Franchisees, Franchisor invoked its right to terminate the franchise agreement without notice under Article XIV(A)(15) of the franchise agreement. Franchisor filed a motion for a preliminary injunction and a complaint seeking a permanent injunction and damages against Franchisees on April 9, 1990. Franchisees filed a counter-claim and third-party complaint on April 18, 1990. The trial court granted the preliminary injunction on April 24, 1990. Franchisees filed an interlocutory appeal contesting the injunction with the Court of Appeals. This court held that the trial court properly granted the preliminary injunction, but reversed the part of the order enjoining Franchisees from operating a Mexican restaurant in general.[1]

On April 26, 1990, Franchisees filed a demand for jury trial. Franchisor filed a motion to strike the jury trial demand, which the trial court granted on June 13, 1991.

Franchisees filed a motion for summary judgment on December 10, 1990. The trial court denied the motion on January 14, 1992. Franchisees filed a motion to amend the pre-trial order on September 29, 1992. The court held a hearing on October 20, 1992, and denied the motion to amend. The parties tried the matter to the bench November 2–9, 1992. After hearing the evidence, the trial court took the matter under advisement. On June 2, 1993, the trial court entered its written findings of fact and conclusions of law in favor of Franchisor. By agreement of the parties, the trial court held a separate hearing concerning attorney fees on September 24, 1993. The trial court took the matter under advisement and entered final judgment on October 4, 1993. The court entered judgment in favor of Franchisor on all claims and awarded Franchisor $131,027.85 in attorney fees. Franchisees filed their praecipe for appeal on November 3, 1993. The trial court granted a stay of enforcement proceedings pending appeal on November 5, 1993.

### Discussion and Decision

#### I.

Franchisees first argue that the trial court misapplied the law on their counter-claim of franchise fraud under the Indiana Franchise Disclosure Act, Ind.Code § 23–2–2.5–1, et seq.

When a judgment is attacked as being contrary to law, we look solely to the evidence most favorable to the judgment, together with all reasonable inferences drawn therefrom. We will reverse the judgment only when the evidence is without conflict and leads to but one conclusion and the trial court reached a contrary conclusion. Popovich v. Blackburn (1991), Ind.App., 573 N.E.2d 918, 919. We will not consider the credibility of the witnesses or weigh the evidence on appeal. Id.

Franchisees contend the trial court committed reversible error when it required proof of scienter for franchise fraud. The requirements for franchise fraud are set forth at Ind.Code § 23–2–2.5–27. Section 27 provides:

---

1. See Hacienda Restaurant v. Hacienda Franchise (1991), Ind.App., 569 N.E.2d 661, trans. denied.

It is unlawful for any person in connection with the offer, sale or purchase of any franchise, or in any filing made with the commissioner, directly or indirectly: (1) to employ any device, scheme or artifice to defraud; (2) to make any untrue statements of material fact or to omit statements of material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading; or (3) to engage in any act which operates or would operate as a fraud or deceit upon any person.

At the time the trial court entered its judgment, the existing case law required proof of scienter for claims of franchise fraud under § 27. See *Enservco, Inc. v. Indiana Securities Div.* (1992), Ind.App., 605 N.E.2d 256, *rev'd* 623 N.E.2d 416.

Prior to Franchisees filing their appeal, our supreme court reversed this court's decision in *Enservco*. See *Enservco, Inc. v. Indiana Securities Div.* (1993), Ind., 623 N.E.2d 416. In its opinion, the court engaged in a careful analysis and discussion of the role of scienter in franchise fraud claims under I.C. § 23–2–2.5–27. The Court held that "[t]o prove section 27(1) franchise fraud, one must show the alleged violator employed a 'device, scheme or artifice' with the knowledge or intent that it might defraud another." *Enservco,* 623 N.E.2d at 423. In essence, the court held that scienter remains a part of section 27(1). The court further held that

to prove a violation of I.C. § 23–2–2.5–27(2) or (3) by false statement or omission, one need not prove any degree of fault on the part of the alleged violator. The elements of section 27(2) and (3) are, in sum, a false statement or omission, materiality, and harm caused by reliance on the statement or omission.

*Id.* at 425. It is clear the court intended to limit this holding to franchise fraud under section 27(2) and (3) *by false statement or omission.* The court stated that "[i]n regard to violations of section 27(2) and (3) by false prediction, promise or representation about the future, however, the legislature quite clearly intended to include fault as an element of proof. Such statements are action-able under section 27 only if they were not made honestly and in good faith." *Id.* at 423, n. 11; I.C. § 23–2–2.5–1(f).

Pursuant to Franchisees' counter-claim, only section 27(2) and (3) are at issue here. Franchisees argue that, based on the Indiana Supreme Court decision in *Enservco*, the judgment should be reversed because the trial court required proof of scienter for section 27(2) and (3). While Franchisees are correct in their assertion that scienter is no longer an element of franchise fraud by false statement or omission under section 27(2) and (3), our analysis cannot stop at this point. Even without scienter as an element, Franchisees must have proved two other elements to prevail on their claim of franchise fraud by false statement or omission. Additionally, Franchisees charged in their counter-claim that Franchisor committed franchise fraud by making false predictions, promises or representations about the future. As stated above this type of franchise fraud requires proof of fault.

■ We will first address Franchisees' claim that Franchisor violated section 27(2) and (3) by making a false statement of a material fact. The evidence showed that Franchisor was involved in a civil lawsuit which was pending at the time the parties entered into the franchise agreement. This lawsuit alleged that several of the partners of Franchisor had made an *ultra vires* transfer of the Hacienda trademark. The offering circular provided to Franchisees affirmatively stated that Franchisor did not have any material civil action pending against it. The trial court found the following concerning this alleged violation:

1. that the statements concerning pending litigation were false and material

2. that the statements were not made with intent to deceive, manipulate or defraud

3. that there was no evidence to suggest that any of Franchisees' losses were related in any way to the false statements about the lawsuit.

■ The trial court erred by requiring scienter as an element of franchise fraud involving a false statement, contrary to our

supreme court's holding in *Enservco.* However, in deciding whether or not the impact of an alleged error was prejudicial, we must determine whether or not the right result was reached notwithstanding the error. *Terpstra v. Farmers and Merchants Bank* (1985), Ind.App., 483 N.E.2d 749, 761, *reh'g denied, trans. denied.* The record supports the trial court's findings that Franchisees did not prove that their harm was caused by reliance on the false statement. Even without scienter as an element, Franchisees failed to prove one of the remaining necessary elements. Therefore, the trial court's error was harmless. The trial court properly ruled against Franchisees on this claim of franchise fraud.

■ Franchisees also claimed that Franchisor violated section 27(2) and (3) by making false predictions, promises or representations about the future. The legislature specifically incorporated the speaker's culpability in fraud by future promise, prediction, or representation. Under I.C. § 23–2–2.5–1(f), the definition of "fraud" and "deceit" includes "any promise or representation or prediction as to the future not made honestly or in good faith." Franchisees alleged that Franchisors falsely projected gross revenues for the restaurant, falsely represented start-up expenses, falsely represented the profitability of the restaurant in the Kalamazoo area, and falsely promised that the restaurant could be successfully operated with absentee investors. The trial court found that Franchisees failed to prove the elements of franchise fraud for these allegations. Specifically, the court found that Franchisees did not prove that they relied on the alleged representations. In making this finding, the court relied on evidence that Franchisees signed a disclaimer in the franchise agreement stating that they had not received or relied upon any guarantees concerning revenues, profits, or success of the franchise. Further, the court found that Franchisees failed to prove that Franchisor's representations as to the future were not made honestly or in good faith. Considering the evidence most favorable to the judgment, we find the trial court's findings to be supported by evidence in the record. The court's conclusion that Franchi-

sor did not commit franchise fraud is not contrary to law.

## II.

■ Franchisees next claim the trial court erred by not imposing personal liability on the principals of Franchisor. The trial court entered judgment in favor of Franchisor on Franchisees' third party complaint against the principals because "resolution of the defendants' [Franchisees] counter-claim in favor of the plaintiff [Franchisor] makes the entry of a judgment in favor of the third party defendants a logical consequence."

I.C. § 23–2–2.5–29 provides:

> Every person who materially aids or abets in an act or transaction constituting a violation of this chapter is also liable jointly and severally to the same extent as the person whom he aided and abetted, unless the person who aided and abetted had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist.

Because Franchisees allege that the trial court's judgment is contrary to law, we look solely to the evidence most favorable to the judgment together with all reasonable inferences drawn from the evidence. We will reverse the judgment only if the evidence is without conflict and leads to but one conclusion and the trial court reached a contrary conclusion. *Popovich,* 573 N.E.2d at 919.

The evidence most favorable to the judgment reveals that Franchisor did not commit any acts of franchise fraud as alleged by Franchisees. Under Section 29, a person must aid or abet in an act or transaction constituting a violation of this chapter in order to be held personally liable for the violation. Because there was no evidence of a violation by Franchisor, the evidence leads to only one conclusion: that the principals did not aid or abet any violations. The trial court reached this same conclusion. Therefore, the judgment is not contrary to law.

## III.

Franchisees contend the trial court erred in denying their first motion for summary judgment. They argue summary judgment

should have been granted in their favor because of Franchisor's false statement about the pending civil litigation.

■ In reviewing a trial court's denial of a motion for summary judgment, we apply the same standard of review used by the trial court. We look to determine whether any genuine issue of material fact exists and whether the law was correctly applied. *Frost v. Phenix* (1989), Ind.App., 539 N.E.2d 45, 47. In determining whether a genuine issue of material fact exists, we accept as true all facts set forth by the non-moving party and resolve all doubts against the movant. *Id.* A court may grant summary judgment only where there is no dispute as to the material facts or inferences drawn therefrom, and the moving party is entitled to summary judgment as a matter of law. *Id.*

Franchisees argued in their motion for summary judgment that there was no genuine issue as to Franchisor's false statement about the pending civil litigation and that they were entitled to judgment as a matter of law. The evidence designated to the trial court showed that genuine issues of fact remained for the court to resolve at trial. Although the evidence showed that Franchisor made false statements concerning the pending civil litigation, the issues of whether the litigation was material and caused the harm still remained. *Enservco*, 623 N.E.2d at 425. Additionally, with respect to Franchisees' claims concerning predictions and promises, there still remained the material issue of whether Franchisors made the statements honestly or in good faith. *Id.* at 423. As such, Franchisees were not entitled to summary judgment as a matter of law. The trial court properly denied Franchisees' motion for summary judgment.

### IV.

Franchisees also contend that the trial court erred in denying their motion for a jury trial.

■ Article 1, § 20 of the Indiana Constitution guarantees a civil litigant the right to a jury trial in those actions which are essentially legal in nature. Equitable claims are to be tried by the court. See also Ind.Trial Rule 38(A). To determine whether or not a party is entitled to a trial by jury, we look

beyond the label given a particular action and evaluate the nature of the underlying substantive claim. *Weisman v. Hopf-Himsel, Inc.* (1989), Ind.App., 535 N.E.2d 1222, 1229. Where the essential nature of the claim is for equitable relief, the entire action is drawn into equity and there is no right to a jury trial. *IHSAA v. Schafer* (1992), Ind.App., 598 N.E.2d 540, 556, *trans. denied.*

■ Franchisor initiated this cause of action by filing a complaint seeking a preliminary injunction and permanent injunctive relief. Injunction is an equitable remedy. *Id.* The permanent injunction remained an issue for trial even though the trial court had already granted the preliminary injunction. Therefore, the entire case was drawn into equity. *Id.* The trial court did not err in denying Franchisees' motion for jury trial.

### V.

■ Franchisees further contend that the trial court erred in denying their motion to amend the pre-trial order. They argue that the trial court should have allowed them to amend the pre-trial order so that the issue of registration to sell franchises could have been presented at trial.

■ It is within the sound discretion of the trial court to permit or deny an amendment of the pre-trial order. The trial court should amend or modify the pre-trial order when requested if modification is necessary to prevent manifest injustice. *Williams v. Graber* (1985), Ind.App., 485 N.E.2d 1369, 1371, *reh'g denied, trans. denied;* T.R. 16(J). In determining whether to permit a modification from the pre-trial order, the trial court considers both the danger of surprise or prejudice to the opponent, and the goal of doing justice to the merits of the claim. *Daub v. Daub* (1994), Ind.App., 629 N.E.2d 873, 875, *trans. denied.*

■ In reviewing the trial court's decision to permit or deny modification of the order, we are limited to determining whether the trial court abused its discretion. *Williams*, 485 N.E.2d at 1372.

The trial court found that Franchisees' contentions did not implicitly include anything concerning the issue of lack of registration to sell franchises in Indiana. The court also found that the information concerning

Franchisor's registration to sell franchises was available to Franchisees throughout the pre-trial process because it was a matter of public record and disclosed in the deposition of a non-party. Further, the court found that the parties' contentions had already formed the issues for trial and concluded that it would not be appropriate to add a new theory to the case so close to the trial date. The court properly considered surprise and prejudice to Franchisor in denying the motion to amend the pre-trial order. Franchisees have failed to show that the trial court abused its discretion in denying amendment of the pre-trial order.

### VI.

Finally, Franchisees contend the trial court erred in awarding attorney fees to Franchisor. They argue that the award must be vacated because the trial court's judgment in favor of Franchisor is erroneous. As discussed in Issue I. above, we hold that the trial court's judgment in favor of Franchisor was supported by the facts and the law.

Article XVIII(G) of the franchise agreement specifically provided for the recovery of reasonable attorney fees by a party who prevailed in enforcing its rights under the agreement. A contract that allows for the recovery of attorney's fees will be enforced according to its terms unless the contract is contrary to law or public policy. *Willie's Construction Co., Inc. v. Baker* (1992), Ind.App., 596 N.E.2d 958, 963, *trans. denied.* The trial court acknowledged that each party to litigation is required to pay their own attorney fees, but awarded the fees based on the terms of the parties' contract. Franchisees have failed to show that the agreement providing for attorney fees to the prevailing party is contrary to law or public policy. The trial court properly awarded attorney fees to Franchisor.

Affirmed.

RILEY and ROBERTSON, JJ., concurring.